## VAN HOESEN *vs.* COVENTRY and MANDEVILLE.

The general doctrine relating to water-courses, is, that every proprietor is entitled to the use of the flow of the water in its natural course, and to the *momentum* of its fall on his own land.   The owner has no property in the water itself, but a simple usufruct.   He may use it as it passes along, but he must send down to his neighbor below, as much as he received from his neighbor above.

Though he may use the water while it runs over his land, he can not unreasonably detain it, or give it another direction, and he must return it to its ordinary channel when it leaves his estate.   Without the consent of the adjoining proprietors, he can not divert or *diminish the quantity* of water which would otherwise descend to the proprietors below.

Running water is not susceptible of an appropriation, which will justify the diversion or unreasonable detention of it.

The proprietor *above* has a right to apply the water to his own use, out the proprietor *below* has an equal right to its subsequent use.   Each must so use it as not to work any material injury or annoyance to his neighbor.

The right to use, necessarily implies the right to dam, and to detain the water long enough to use it to advantage.   The maxim, *sic utere tuo, ut alienum non lædas,* must be taken and construed with an eye to the natural rights of all.

But, while each proprietor has a right to detain the water as it passes through his land, long enough for the proper and profitable enjoyment of it, he can only *detain* it.   He cannot lawfully *divert* it.

The question in every case of infringement of water rights or privileges, seems to be, according to all the authorities, whether the water has been *diverted,* or *unreasonably detained.*   If there has been a *diversion,* accompanied with injury, an action may be sustained.   If there has been merely a *detention,* then the *further question* arises, whether such *detention* was *reasonable.*   But whether, or not, a *diversion* of water is reasonable, is an unsettled question.

The owners of a mill have *not* the right, when it becomes necessary for the purpose of repairs, to divert the stream upon which it is situated, to the injury of another proprietor upon the same stream below.   And if they can not make their repairs without such injurious *diversion* of the stream, they must obtain the consent of the proprietor below them, for that purpose, or answer him in damages for the injury he sustains.

*It seems* that a right to make such diversion of the stream might be acquired by *prescription.*   But that the lapse of time, sufficient to justify the inference of a *prescriptive right* to other privileges which the owners enjoy, is not of itself enough to show that the *diversion* of the stream, when necessary for repairs, is among them.

Van Hoesen *v.* Coventry.

MOTION to set aside report of referee. The plaintiff was the owner of a woolen factory, upon the Kinderhook creek, in the town of Stuyvesant. The defendants were owners of mills upon the same stream, above the plaintiff's factory. There was an island in the creek opposite the premises of both parties. The defendants' mills were near the upper end of the island, and the plaintiff's factory was near the lower end. Both were on the easterly branch of the creek. In the summer of 1846, it became necessary for the defendants to repair their dam and flume, and for that purpose, they shut down the head gates of their dam, the effect of which was to divert a portion of the water to the west branch of the creek, and away from the plaintiff's mill. In consequence of such diversion, the plaintiff was compelled to suspend business at his factory for several days. For the injury thus sustained, this action was brought. The referee reported that upon the evidence before him, the following, among other facts, were established. That in the ordinary flow of the stream, to shut down the head gates in the defendants' dam, diverted a portion of the water from the east to the west branch of the stream; that while the head gates of the defendant's dam were closed, sufficient water was thrown into the west branch of the stream, to affect injuriously the plaintiff's mill below, on the east branch; that the repairs made by the defendants were necessary and could not be made without closing down the head gates, and that they were prosecuted with unusual vigilance in the number of hands employed, working early and late to complete them. The referee reported in favor of the defendants, and stated that he placed his decision mainly on the ground that, as matter of law, the defendants, for the enjoyment of their own property, had a right to close down the head gates of their dam, temporarily, to make substantial and necessary repairs, doing no unnecessary damage.

*K. Miller*, for the plaintiff.

*H. Hogeboom*, for the defendants.

HARRIS, J. The question presented by this case is, whether the owners of a mill have the right, when it becomes necessary for the purpose of making repairs, to *divert* the stream upon which it is situated, to the injury of another proprietor upon the same stream below. So far, at least, as my own researches have extended, the question has not been adjudged. Its decision must depend upon the general principles applicable to the subject.

The general doctrine relating to water courses is, that every proprietor is entitled to the use of the flow of the water, in its natural course, and to the *momentum* of its fall on his own land. The owner has no property in the water itself, but a simple usufruct. (He may use it as it passes along, but he must send down to his neighbor below, as much as he received from his neighbor above. \(*Angell on Water Courses*, §§ 90, 94. 3 *Kent's Com.* 439.) " Though he may use the water while it runs over his land," says Kent, " he can not unreasonably detain it, or give it another direction, and he must return it to its ordinary channel when it leaves his estate. Without the consent of the adjoining proprietors, he can not *divert, or diminish the quantity* of water which would otherwise descend to the proprietors below." (3 *Kent's Com.* 439.)

In *Blanchard* v. *Baker*, (8 *Greenl.* 253, 266,) the doctrine is stated in the following clear and emphatic language. " It is an ancient and well established principle, that water can not be lawfully diverted, unless it is returned again to its accustomed channel, before it passes the land of the proprietor below. Running water is not susceptible of an appropriation, which will justify the *diversion* or unreasonable detention of it." " The owners of mills on a stream," says Justice Story, in, *Webb* v. *The Portland Manufacturing Co.* (3 *Sumner;* 189,) "have an undoubted right to the flow of the water, as it has been accustomed of right and naturally to flow to their respective mills. The proprietor above has no right to *divert* or *unreasonably retard* this natural flow to the mills below." (*Page* 200.) " No proprietor can *diminish* the quantity of water which would otherwise descend to the proprietors below," says the vice-chancellor in *Wright* v. *How-*

Van Heesen *v.* Coventry.

ard, (1 *Sim. & Stu.* 190, 203.) Lord Ellenborough, in *Bealy* v. *Shaw,* (6 *East,* 208, 214,) says : " The general rule of law is, that every man has a right to have the advantage of a flow of water in his own land, without diminution or alteration." Chief Justice Gibson, in *McCalmont* v. *Whitaker,* (3 *Rawle,* 84, 90,) says : " The water power to which a riparian owner is entitled, consists of the fall in the stream when in its natural state, as it passes through his land, or along the boundary of it, or in other words, it consists of the difference of level between the surface where the stream first touches his land, and the surface where it leaves it." It is also laid down as the law of Scotland, that " although a proprietor may use the water while within his own premises, yet he must allow it to pass on to the inferior heritors." (*Bell's Law of Scot.* 691, *cited by Angell in his treatise on Water Courses,* 4th ed. § 95, *note. See also Gardner* v. *Village of Newburgh,* 2 *John Ch.* 162.)

Other authorities to the same effect might be cited, but these are sufficient to show how clearly the general doctrine on the subject is settled, and how uniformly it has been recognized. The proprietor above has a right to apply the water to his own use, but the proprietor below has an equal right to its subsequent use. Each must so use it, as not to work any material injury or annoyance to his neighbor. The right to use necessarily implies the right to dam and to detain the water long enough to use it to advantage. " The maxim, *Sic utere tuo, ut alienum non lædas,*" says Thompson Ch. J. in *Platt* v. *Johnson,* (15 *John.* 213, 218,) " must be taken and construed with an eye to the natural rights of all." But, while each proprietor has a right to detain the water, as it passes through his land, long enough for the proper and profitable enjoyment of it, he can only *detain* it. He can not lawfully *divert* it. Chancellor Kent states the rule on this subject as follows : " All that the law requires of the party, by or over whose land a stream passes, is, that he should use the water in a reasonable manner, and so as not to destroy, or render useless, or materially diminish, or affect the application of the water, by the proprietors above or below on the stream. He must not shut the gates of his dams, and detain the water unreason-

ably, or let it off in unusual quantities to the annoyance of his neighbor." (3 *Kent's Com.* 440, 441.) Judge Story, in noticing the rule as thus laid down by Kent, says : " I scarcely know, where else the doctrine can be found reduced to so elegant and satisfactory a formulary." (*See Webb* v. *The Portland Manufacturing Co., above cited, p.* 199.)

The application of this rule to the case under consideration can not, it seems to me, justify the defendants, even for the temporary purpose of repairs, in diverting the water from the plaintiff's mill. If such *diversion* had been absolutely necessary, as the referee seems to think, although I am not quite sure that the testimony warranted that conclusion, I think it should be regarded as a defect in the defendants' water power, the consequences of which should fall upon them and not upon the plaintiff. The question, in every such case, seems to be, according to all the authorities, whether the water has been *diverted* or *unreasonably detained.* If there has been a *diversion* accompanied with injury, the action is sustained. If there has been merely a *detention,* then the further question arises, whether such detention was *reasonable.* But whether or not a *diversion* of water is reasonable, is a question not so much as mentioned by any writer or judge. The very proposition assumes the right of the proprietor above to use the water for his own purposes, to the exclusion of the proprietor below ; a proposition inconsistent with the doctrine universally admitted, as we have seen, that all the proprietors have the same rights.

My conclusion, therefore, is, that if the defendants' water power is so situated, in reference to the two branches of the stream, that they are unable to make repairs to their dam and flume without diverting the water from one branch to the other, and thus entirely depriving the plaintiff of the use of the water so diverted, they must obtain the plaintiff's consent to make such diversion, or answer to him in damages for the injury he sustains.

I do not think there is any thing in the case to justify the inference of a prescriptive right to divert the water. It is true, as the referee states, that " the lapse of time during which the de-

fendants, and those under whom they claim, have used and enjoyed their mill-site, is sufficient, in the absence of other proof, to presume a grant of the rights they now enjoy." But there is an entire want of evidence to show that the *diversion* of the stream, when necessary for repairs; is among those rights. But however this may be, the question has not been passed upon by the referee. He has placed his decision exclusively upon the right of the defendants, by virtue of their title as riparian owners, to divert the water. Having come to the conclusion that he has erred in this respect, I think the report should be set aside.

WATSON, J. concurred.

PARKER, J. dissented.

Report of referee set aside.

