Elliot *v.* Fitchburg Railroad Company.

*Bill dismissed.*

*S. E. Sewall,* for the complainants.
*H. H. Fuller,* for the respondents.

LEWIS ELLIOT *vs.* THE FITCHBURG RAILROAD COMPANY.

One riparian proprietor cannot maintain an action against an upper proprietor for a diversion of part of the water of a natural watercourse flowing through their lands, unless such diversion causes the plaintiff actual perceptible damage.

THIS action was tried in this court, at the October term, 1849, before *Metcalf,* J. under whose rulings a verdict was found for the defendants. The plaintiff excepted to the rulings and instructions, which, with the facts of the case, sufficiently appear in the opinion.

*D. S. & W. A. Richardson*, for the plaintiff.

*G. F. Farley*, for the defendants.

SHAW, C. J.   This is an action of the case against the defendants, for diverting the water of a small brook, passing through land of the plaintiff in Shirley.   The facts are briefly these :  The plaintiff is the owner of certain land, and for more than sixty years a small brook, having its sources in several ponds, has, in its natural course, flowed through lands of various persons, viz :  of one Clark, of one Furnin, and then through the plaintiff's land, which is about half a mile below said Clark's, and from the plaintiff's land, through various other lands to Nashua river.   Said brook was in part supplied by a never-failing spring, on said Clark's land, near said brook, and having its outlet into it.   The defendants, pursuant to a warranty deed from said Clark, of a perpetual right and privilege to make and maintain a dam and reservoir, and draw and use the water therefrom, erected such dam across said stream, below said spring, and made said reservoir upon and about the same, and inserted a lead pipe therein, by means of which they have used and constantly taken water, from said reservoir, to their depôt in Shirley, and used the same for furnishing their locomotive steam-engines with water, and for other similar purposes.   The defendants offered evidence tending to prove that said Clark, where said brook runs through his meadow, which is wet and springy, had cut ditches across the meadow to the brook, thereby increasing the flow of water to the brook; and it was further proved that there is no outlet for the water of said meadow, except into this brook. The meadow is situate below the dam.

The plaintiff contended that if the jury were satisfied of the existence of the brook, as alleged, and the diversion of the water therefrom by the defendants, he was entitled to a verdict for nominal damage, without proof of actual damage.   But the presiding judge instructed the jury that unless the plaintiff suffered actual perceptible damage in consequence of the diversion, the defendants were not liable in this action.   In connection with this instruction, the judge further instructed the jury that if they believed that the defendants, by excavating

said reservoir and spring above the dam, or that said Clark, by digging said ditches, had increased the flow of water in said brook, equal to the quantity of water the defendants had diverted therefrom, then the defendants were not liable in this action.

The whole court are of opinion that this direction was right, in both particulars.

This appears to have been a small stream of water; but it must, we think, be considered that the same rules of law apply to it, and regulate the rights of riparian proprietors, through and along whose lands it passes, as are held to apply to other watercourses, subject to this consideration, that what would be a reasonable and proper use of a considerable stream, ordinarily carrying a large volume of water, for irrigation or other similar uses, would be an unreasonable and injurious use of a small stream, just sufficient to furnish water for domestic uses for farm-yards, and watering-places for cattle.

The instruction requested by the plaintiff is, we think, founded on a misconception of the rights of riparian proprietors in watercourses passing through or by their lands. It presupposes that the diversion of any portion of the water of a running stream, without regard to the fitness of the purpose, is a violation of the right of every proprietor of land lying below, on the same stream, so that, without suffering any actual or perceptible damage, he may have an action for the sole purpose of vindicating his legal right.

The right to flowing water is now well settled to be a right incident to property in the land; it is a right *publici juris*, of such character, that whilst it is common and equal to all, through whose land it runs, and no one can obstruct or divert it, yet, as one of the beneficial gifts of Providence, each proprietor has a right to a just and reasonable use of it, as it passes through his land; and so long as it is not wholly obstructed or diverted, or no larger appropriation of the water running through it is made than a just and reasonable use, it cannot be said to be wrongful or injurious to a proprietor lower down. What is such a just and reasonable use, may often be a difficult question, depending on various circum-

stances.  To take a quantity of water from a large running stream for agriculture or manufacturing purposes, would cause no sensible or practicable diminution of the benefit, to the prejudice of a lower proprietor; whereas, taking the same quantity from a small running brook passing through many farms, would be of great and manifest injury to those below, who need it for domestic supply, or watering cattle; and therefore it would be an unreasonable use of the water, and an action would lie in the latter case and not in the former.  It is therefore, to a considerable extent, a question of degree; still, the rule is the same, that each proprietor has a right to a reasonable use of it, for his own benefit, for domestic use, and for manufacturing and agricultural purposes.

It has sometimes been made a question whether a riparian proprietor can divert water from a running stream, for purposes of irrigation.  But this, we think, is an abstract question which cannot be answered either in the affirmative or negative, as a rule applicable to all cases.  That a portion of the water of a stream may be used for the purpose of irrigating land, we think is well established as one of the rights of the proprietors of the soil along or through which it passes.  Yet a proprietor cannot under color of that right, or for the actual purpose of irrigating his own land, wholly abstract or divert the watercourse, or take such an unreasonable quantity of water, or make such unreasonable use of it, as to deprive other proprietors of the substantial benefits which they might derive from it, if not diverted or used unreasonably.  The point may, perhaps, be best illustrated by extreme cases.  One man, for instance, may take water from a perennial stream of moderate size, by means of buckets or a pump—for the mode is not material—to water his garden.  Another may turn a similar current over a level tract of sandy soil of great extent, which in its ordinary operation, will nearly or quite absorb the whole volume of the stream, although the relative position of the land and stream are such, that the surplus water, when there is any, is returned to the bed of the stream.  The one might be regarded as a reasonable use, doing no perceptible damage to any lower proprietor, whilst the other would nearly deprive

him of the whole beneficial use, and yet, in both, the water would be used for irrigation. We cite a few of the leading cases in Massachusetts, on this subject. *Weston* v. *Alden,* 8 Mass. 136; *Colburn* v. *Richards,* 13 Mass. 420; *Cook* v. *Hull,* 3 Pick. 269; *Anthony* v. *Lapham,* 5 Pick. 175.

This rule, that no riparian proprietor can wholly abstract or divert a watercourse, by which it would cease to be a running stream, or use it unreasonably in its passage, and thereby deprive a lower proprietor of a quality of his property, deemed in law incidental and beneficial, necessarily flows from the principle, that the right to the reasonable and beneficial use of a running stream, is common to all the riparian proprietors, and so, each is bound so to use his common right, as not essentially to prevent or interfere with an equally beneficial enjoyment of the common right, by all the proprietors. Were t otherwise, and were it an inflexible rule that each lower proprietor has a right to the full and entire flow of the natural stream, without dimunition, acceleration or retardation of the natural current, it would follow, that each lower proprietor would have a right of action against any upper proprietor, for taking any portion of the water of the stream for any purpose; such a taking would be a disturbance of his right; and if taken by means of a pump, a pipe, a drain, or otherwise, though causing no substantial damage, it would be a nuisance, and warrant the lower proprietor, in entering the close of the upper, to abate it. *Colburn* v. *Richards,* 13 Mass. 420.

It would also follow, as the legal and ·practical result, that no proprietor could have any beneficial use of the stream, without an encroachment on another's right, subjecting him to actions *toties quoties,* as well as to a forcible abatement of the nuisance. If the plaintiff could, in a case like the present, have such an action, then every proprietor on the brook, to its outlet in Nashua river, would have the same; and because the quantity of dimunition is not material, every riparian proprietor on the Nashua would have the same right, and so every proprietor on the Merrimack river to the ocean. This is a sort of *reductio ad absurdum,* which shows that such cannot be the rule, as was claimed by the plaintiff.

Without intending at present to state the authorities fully, we refer to the following English cases, as tending to illustrate and fix the rule as stated. *Bealey* v. *Shaw*, 6 East, 208; *Duncombe* v. *Randall*, Hetley, 32; *Williams* v. *Morland*, 2 B. & C. 910; 4 Dow. & Ry. 583; *Wright* v. *Howard*, 1 Sim. & Stu. 190.

If the use which one makes of his right in the stream is not a reasonable use, or if it causes a substantial and actual damage to the proprietor below, by diminishing the value of his land, though at the time he has no mill or other work to sustain present damage, still, if the party thus using it, has not acquired a right by grant, or by actual appropriation and enjoyment twenty years, it is an encroachment on the right of the lower proprietor, for which an action will lie. *Mason* v *Hill*, 3 B. & Ad. 304; 5 B. & Ad. 1; *Wood* v. *Waud*, 3 Welsby, Hurlst. & Gord. 748. But the doctrine is much discussed and settled on deliberation, in a recent case decided in the court of exchequer. *Embrey* v. *Owen*, 6 Welsby, Hurlst. & Gord. 353.

The right to the use of flowing water is *publici juris*, and common to all the riparian proprietors; it is not an absolute and exclusive right to all the water flowing past their land; so that any obstruction would give a cause of action; but it is a right to the flow and enjoyment of the water, subject to a similar right in all the proprietors, to the reasonable enjoyment of the same gift of Providence. - It is therefore only for an abstraction and deprivation of this common benefit, or for an unreasonable and unauthorized use of it, that an action will lie; but for such deprivation or unwarrantable use, an action will lie, though there be no actual present damage. So it is subsequently stated in the close of the case last cited; "so long as this reasonable use by one man of this common property does no actual and perceptible damage to the right of another to the similar use of it, no action will lie."

We think the most reliable American authorities are to the same effect. 3 Kent Com. (6th ed.) 439; Angell on Watercourses, Ch. iv.; *Blanchard* v. *Baker*, 8 Greenl. 253; *Tyler* v. *Wilkinson*, 4 Mason, 397; *Webb* v. *Portland Manufacturing Co.* 3 Sumner, 189; *Anthony* v. *Lapham*, 5 Pick. 175.

The same doctrine has been held in a recent case in New York. *Van Hoesen* v. *Coventry*, 10 Barb. 518.

In applying these rules to the present case, we are to consider that Clark, who owned the land on which the dam was built, and the defendants to whom he conveyed all his right to the use of the water, as holding together the whole right, and it is to be considered in the same manner as if the defendants owned the land. We think it was properly left to the jury to find, whether the defendants claiming in the right of Clark, had by their diversion of the water for a valuable and highly beneficial use, caused any actual or perceptible damage, and if not, to find for the defendants. It is very clear, that here is no complaint of the total diversion of the stream from the plaintiff's land; no such ground of complaint is set forth, or relied on. The bed of the stream and the stream itself, remains and passes through the plaintiff's land as it did before. The gravamen of the complaint is, not for diverting the stream itself, but for abstracting a part of the water of the stream. This is a right which each proprietor has, if exercised within a reasonable limit. The proper question therefore was, whether, in the mode of taking, in the quantity taken, and the purpose for which it there was taken, was a reasonable and justifiable use of the water by Clark. The use being lawful and beneficial, it must be deemed reasonable, and not an infringement of the right of the plaintiff, if it did no actual and perceptible damage to the plaintiff, and therefore we think that question of fact was rightly left to the jury, who must have found that it did him no such damage.

We consider the other direction correct also, as we understand it. The question was not, if the defendants had caused a damage to the plaintiff, amounting in law to a disturbance of his right, for which an action would lie, whether it would be barred by an advantage of equal value, conferred in nature of a set-off; but whether the improvements of Clark upon his meadow, taken together as a whole, including the dam and ditches as parts of one and the same improvement, any damage was done to the plaintiff; and this we think was correctly so left.

17*

It may perhaps be proper to guard against misconstruction, in considering what are the general rights and duties of persons owning lands, bounding on running streams, by the general rules of law and for general purposes, that some alterations of these rules, may be effected in Massachusetts, by the acts of legislation on that subject, in respect to mills, and the construction which has been judicially put upon such legislative acts. This system originated with the provincial act, 13 Anne, passed in 1714, Ancient Laws and Charters, 404. This act by its operation necessarily secures, to some extent, advantages to the prior occupant of a stream, by a dam erected to work a mill. *Bigelow* v. *Newell,* 10 Pick. 348; *Bemis* v. *Upham,* 13 Pick. 167; *Baird* v. *Wells,* 22 Pick. 312.

It is not necessary, however, now to go into this subject, but merely to say that the rights to streams of running water, upon which the present question turns, are not dependent upon, or affected by the mill acts.      *Exceptions overruled.*