# FARRAND vs. MARSHALL.

21b 409
43ap419

21b 409
168 NY²155

A man may dig on his own land, but not so near that of his neighbor as to cause the land of the latter to fall into his pit, thus transferring a portion of another man's land to his own.

He may excavate and remove his soil for manufacturing it into brick; but if thereby he removes the natural support of his neighbor's land, so that it cannot stand by its own coherence, and it subsides and falls into the pit made by his excavations, thus disturbing his neighbor in the enjoyment and possession of his property, and damaging him, the law will hold the wrongdoer answerable for such consequences; provided his neighbor has done nothing with his own land contributing to produce the injury and in hostility to the legitimate and proper exercise of the other's paramount right to improve his own premises.

Where A. and B. are adjoining landowners, A.'s land being in its natural state, and supported by the adjacent soil of B., and having always been thus laterally supported, it is the right of A. that he may enjoy his land in the condition in which it was placed by nature ; and B. will not be permitted to render his enjoyment of it insecure, or destroy it altogether, by removing its natural support.

B. may excavate and remove the earth from his land, provided he does not interfere with the paramount right of A. to the possession and enjoyment of his property, or the natural right which A. possesses, to have his land surrounded and protected by the adjacent soil.

The law, while it gives to an individual entire dominion over his own soil, will restrain him in the mode of using or enjoying his property, if such mode of enjoyment infringe upon, or violate, the right of domain in others.

A court of equity has power to restrain a landowner from excavating or removing soil from his land adjoining the land of another, if the effect of such excavation and removal will be to cause the land of his neighbor, by reason of the withdrawal of its lateral support, to fall away or subside.

APPEAL from an order made at a special term, overruling a demurrer to the complaint. The complaint states that the plaintiff is the owner of a piece of land in the city of Hudson, purchased from the defendant, in June, 1846, bounded easterly, in front, by Second street, northerly by Strawberry alley, and westerly by land owned by the defendant; that the lot is about 220 feet in width on Second street, and extends westerly 200 feet; that northerly of this lot, on the opposite side of Strawberry alley, is a lot conveyed by the defendant to one George Robinson, in October, 1844, and in the deed of conveyance the defendant reserved the right and privilege of taking and carrying away so much and such clay or dirt as he might wish, for the purpose of making brick; that the plaintiff's lot is situated on the summit of a hill, over 70 feet above its base, and is nearly level; that such level before the excavation by the defendant mentioned in the complaint, extended about 90 feet beyond the western boundary of the plaintiff's premises, on to the premises of the defendant, and then the hill sloped towards the Hudson river; that the Robinson lot was also situated upon the northerly slope of the hill; that the plaintiff's lot, being 80 feet above the level of the river, and about 1500 feet from its east channel, formed an eligible site for a residence, with a fine and extensive view of the river and surrounding country; that upon purchasing the lot the plaintiff commenced making improvements, and has erected thereon valuable buildings, and fences along the exterior line thereof, and has brought the lot to a high state of cultivation; that the dwelling house erected thereon is

Farrand *v.* Marshall.

situated near the centre of the plaintiff's lot, and about 100 feet easterly of the west boundary thereof; that his other buildings are about 140 feet east of the western boundary of the lot; that the buildings are so constructed as not by their superincumbent weight or otherwise to disturb the natural coherency of the soil, nor to add to the lateral or subjacent pressure upon the premises of the defendant, or of Robinson; nor to increase the natural tendency of the soil to subside or sink down at the westerly boundary of the plaintiff's premises, or within 80 feet therefrom; that the defendant has a brick yard upon premises owned by him in the vicinity of these lots, where he has been and still is extensively engaged in the manufacture of brick; that since he sold the lot to the plaintiff he has been making excavations in the hill west of the plaintiff's lot, and removing the earth for the purpose of making brick; that these excavations extend nearly the whole width of the lot from Strawberry alley to Rope alley, and at some points have been carried within four or five feet of the plaintiff's lot; that about 32 feet west from the plaintiff's lot the excavation or cut has been carried into the hill perpendicularly to the depth of about 50 feet, and about 60 feet in width; that such excavation is made for the purpose of removing the earth and converting it into brick, and not for the purpose of improving or benefiting the premises on which the excavations are made; that the effect of the excavation has already been to cause a great portion of the western and northwestern part of the plaintiff's lot to crack and subside, and the fences to crack and stretch apart; and if the excavation is longer pursued the premises will cave in and fall away, and will subside and fall over into the pit made by such excavations, and the plaintiff's dwelling house will be endangered; that the defendant has declared his intention to continue his excavations up to the line of the plaintiff's lot, and has served upon the plaintiff a written notice to that effect; that the defendant has also declared his intention to remove the clay from the lot northerly of the plaintiff's lot, the effect of which would be to cause the plaintiff's fences to break apart and the soil to sink down and slide away, and thus produce great and irreparable injury to the plaintiff; that at the time of receiv-

Farrand *v.* Marshall.

ing a deed from the defendant, the plaintiff was entirely ignorant of the right and privilege reserved to the defendant to take and carry away clay and dirt from the Robinson lot for the purpose of making brick, and was also ignorant that the defendant's premises had been used for any considerable number of years as a brick yard, or for the purpose of excavating earth or clay for the making of brick; that the excavations were carried on upon the defendant's premises for a considerable time after the conveyance to the plaintiff, before the plaintiff discovered any injurious effects therefrom to his lot; that anticipating ultimate danger therefrom, he has long ago and repeatedly since the conveyance to him, requested the defendant to desist from prosecuting the said excavations further, and threatened proceedings against him to compel him so to desist; but the defendant has always neglected and refused so to do, and still neglects and refuses.

The complaint demands judgment that the defendant may be enjoined to cease and desist from digging and excavating in and upon his lot for the purpose of obtaining clay or earth to manufacture brick, and that he be enjoined not to dig or excavate for such purpose in and upon the Robinson lot from a line drawn from a point on the westerly line of Second street, at a distance of 200 feet from the southeasterly extremity of said lot to the point on the southeasterly line of a road or highway mentioned in the complaint, at a distance of 250 feet in a direct line to the nearest point on Strawberry alley; that the injunction not to dig or excavate for such purposes be made perpetual; and that there be an accounting of, and compensation for, the damages already sustained by the plaintiff from the defendant's excavations and wrongful acts.

The defendant demurred to the complaint, assigning as grounds, that it does not state facts sufficient to constitute a cause of action; that it does not state facts sufficient to constitute a proper case for an order restraining the defendant as prayed therein, nor a proper case for an accounting; and that several causes of action are improperly united.

The demurrer was heard at special term, and an order made

Farrand *v.* Marshall.

overruling the same ; from which order the defendant appealed to this court.(*a*)

*H. Hogeboom,* for the plaintiff.

*J. H. Reynolds,* for the defendant.

*By the Court,* WRIGHT, J. . The parties are owners, and in possession, of adjoining closes, the plaintiff having acquired title from the defendant. Where the closes adjoin, the land is in its natural state. The plaintiff has laid no additional weight upon his land increasing the lateral pressure. The defendant is engaged in digging and removing the earth and clay from his close, near its junction with that of the plaintiff, for the purpose of making brick. He has already excavated to the depth of fifty feet, within a short distance of the western extremity of the plaintiff's close, so as to cause the plaintiff's land, which is situated upon the summit of a hill, to crack and subside, and the exterior fences to crack and stretch apart. The defendant threatens to pursue his excavations up to the western line of the plaintiff's close, the consequence of which will be, the plaintiff's land, losing its natural support, will subside and fall over into the pit made by such excavations. The question is whether the defendant may thus use and enjoy his own land, and destroy that of his neighbor by removing its natural support; such neighbor's land being in the situation in which it was placed by nature. I am not aware of any adjudged case in which the precise question has arisen ; but there are a number of cases where it has been discussed incidentally by learned judges. The bent of their minds is pretty decidedly indicated, but the discussion being *obiter,* the cases are not controlling authority on the question. As long ago as the time of the first Charles it was held in the king's bench, that if A., seised in fee of land next adjoining the land of B., erect a new house on his land, and part of the house is erected on the confines of his land next adjoining

(*a*) See S. C. at special term, on a motion to vacate or modify the injunction, 19 *Barb.* 380.

the land of B., if B. afterwards digs his land near to the founda-
tion of the house of A., whereby the foundation of the house,
and the house itself, falls into the pit, still no action lies at the
suit of A. against B., for this was the fault of A. himself that
he built his house so near to the land of B., for he could not by
his act hinder B. from making the most profitable use of B.'s
land. (15 *Car.* 1, *B. R., Wilde* v. *Minsterley.*) The princi-
ple of this case has not been since very firmly maintained in
Westminster Hall, and we may not at this day see much in the
reasoning to applaud. *Rolle,* in stating the case, adds : " But,
*semble,* that a man, who has land next adjoining to my land
cannot dig his land so near to my land that thereby my land
shall fall into his pit; and for this if an action were brought, it
would lie." (2 *Rol. Abr. Tres.* (*I*) *p.* 1.) This latter doctrine
is recognized by Lord C. B. Comyns, *Dig. Action on the Case
for a nuisance,* (*a.*) By Lord Tenterden, in *Wyatt* v. *Harri-
son,* (3 *Barn. & Adolp.* 871 ;) by Lord C. J. Campbell in
*Humphries* v. *Brogden,* (1 *Law & Eq. R.* 241 ;) by Ch. J.
Parker in *Thurston* v. *Hancock,* (12 *Mass. R.* 220 ;) by Chan-
cellor Walworth in *Lasala* v. *Holbrook,* (4 *Paige,* 169 ;) and
by *Gardiner, J.,* in *Hay* v. *The Cohoes Company,* (2 *Comst.* 159.)
In all these cases the doctrine is approved. On the other hand,
Ch. J. Bronson in *Radcliff's Ex'rs* v. *The Mayor of Brooklyn,*
(4 *Comst.* 195,) questions and disapproves of it. In none of the
cases was the precise point in judgment, though that of *Hum-
phries* v. *Brogden,* was in principle strongly analogous. The
latter was a case of subjacent instead of lateral support of lands
in their natural state, and in this respect only did it differ from
the present one. It was held that when the surface of land, or
the soil lying over the minerals, belongs to one man, and the
minerals belong to another, no evidence of title appearing to
regulate or qualify their rights of enjoyment, the owner of the
surface, while unincumbered by buildings, and in its natural
state is entitled to have it supported by the subjacent mineral
strata; that those strata may, of course, be removed by the
owner of them, so that a sufficient support for the surface is left;
but if the surface subsides and is injured by the removal of the

Farrand *v.* Marshall.

strata, although the operation may not have been conducted negligently, the owner of the surface may maintain an action against the owner of the minerals for the damages sustained by the subsidence. Lord Campbell, C. J., said, that in the case of adjoining closes, the right to lateral support "stands on natural justice and is essential to the protection and enjoyment of property in the soil. This right to lateral support from the adjoining soil is not like the support of one building upon another, supposed to be gained by grant, but is a right of property passing with the soil. If the owner of two adjoining closes conveys away one of them, the alienee, without any grant for that purpose, is entitled to the lateral support of the other close the very instant when the conveyance is executed, as much as after the expiration of twenty years, or any longer period;" and *pari ratione* where there are separate freeholds not adjoining, but one in the surface of the land, and the other in the minerals beneath the surface, the owner of the surface is entitled to have it supported from the subjacent mineral strata, corresponding to the lateral support to which it is entitled from the adjoining close, else it cannot be securely enjoyed as property, and might be entirely destroyed.

The counsel for the defendant insists, (the *dicta* in Rolle, and of Chancellor Walworth, Lord Campbell, and Ch. J. Parker to the contrary notwithstanding,) that the case of *Radcliff's Ex'rs* v. *Mayor of Brooklyn*, settles the principle that a man may, without being liable to an action, dig so near the premises of another that the soil, without any superincumbent weight is precipitated into the pit. If this be so, we would have but the course left to follow that case. But we do not regard the case as settling such a principle. It is true that Bronson, C. J. in pronouncing the judgment of the court, indicated his dissent to the *dictum* in Rolle ; but the expression of such dissent was *obiter*. It was not necessary to the decision of the case that the distinguished judge, or his associates, should commit themselves upon the question. Indeed, the judge cautiously states his dissent, adding that the case under consideration "*seems* to fall within the principle that a man may enjoy his land in the way

such property is usually enjoyed, without being answerable for the indirect or consequential damages which may be sustained by an adjoining landowner. But if that be a doubtful position there is a class of cases directly on the point in judgment," viz, that a municipal corporation acting under an authority conferred by the legislature, to grade, level and improve streets and highways, if they exercise proper care and skill, are not answerable for the consequential damages which may be sustained by those who own lands bounded by the street or highway. And this latter point, which Judge Bronson himself says disposes of the case, was the only one settled by the judgment of the court. The corporation of Brooklyn, by virtue of the power conferred on it by law, took regular and legal proceedings for grading and leveling a street in that city for public use. The digging was done in the site of the street. But in consequence of digging away a bank in the site of the street which was a natural support of the testator's land, a portion of his premises fell into the street and he suffered damage. His executors brought their action to recover for this consequential damage. There was no charge that the defendants acted maliciously, nor did the pleadings impute to them any want of skill or care in doing the work. "The defendants," says Bronson, C. J., in pronouncing judgment, "are a public corporation, and the act in question was done for the benefit of the public, and under ample authority, if the legislature had power to grant the authority, without providing for the payment of such consequential damages as have fallen upon the testator. Our constitution provides that private property shall not be taken for public use without just compensation. But I am not aware that this, or any similar provision in the constitution of other states, has ever been held applicable to a case like this. Although the testator's property has suffered damage, I find no precedent for saying that it has been "taken for public use," within the meaning of the constitution. This short view is enough perhaps to dispose of the case." And so it was. But as is too much the practice of modern times, there had been a wide range of discussion at the bar, and the judge deemed it proper to follow counsel, even after enough

had been said to dispose of the case. Accordingly the doctrine in Rolle is attacked, with an expression of opinion of the judge as to its unsoundness. But, apprehensive that this position might be regarded as a doubtful one, he returns to the point first urged as a conclusive answer to the plaintiff's right to recover, and urges it with characteristic force and power, backed by authority, calculated to produce, and producing, conviction upon the minds, and fashioning the opinions of his associates. We cannot regard the case as authority binding us to say that a man may destroy his neighbor's land by depriving it of its natural support, when such land is in its natural state, and that it is *damnum absque injuria.*

It is urged on the part of the defendant that he has done, or threatens to do, no more than use his own property, on his own premises, in the pursuit of his lawful business, and in accordance with his legal rights. If this be so, then though the enjoyment by the plaintiff of his property, by such use, may be rendered insecure, or wholly destroyed, the latter is without remedy : and much as we might lament the defectiveness of the common law in this respect, it would be our plain duty to declare that the defendant is not answerable. But we believe that the common law is adequate to afford redress against consequences like those impending and threatened in this case.

The case was argued on behalf of the defendant as though the owner of land possessed the absolute right to use it as he pleased, so long as he kept within the boundaries of his own soil, regardless of the rights of others to the lawful possession and enjoyment of their property ; and that before the plaintiff could maintain an action of this kind it must be established that he has a legal right to control the manner in which the defendant may enjoy and use his property. This we deem unsound. It might be so, if private rights were uniformly treated as absolute and abstract, and never as qualified, limited and relative. "It is an elementary principle," says Gardiner, J., in *Hay* v. *The Cohoes Company,* "in reference to private rights, that every individual is entitled to the undisturbed possession and lawful enjoyment of his own property. The mode of enjoyment is ne-

cessarily limited by the rights of others; otherwise it might be made destructive of their rights altogether. Hence, the maxim *sic utere tuo*, &c. The defendant had the right to dig the canal; the plaintiff the right to the undisturbed possession of his property. If these rights conflict, the former must yield to the latter as the more important of the two, since, upon grounds of public policy it is better that one man should surrender a particular use of his land than that another should be deprived of the beneficial use of his property altogether, which might be the consequence if the privilege of the former should be wholly unrestricted. * * * The use of land by the proprietor is not therefore an absolute right, but qualified and limited by the higher right of others to the lawful possession of their property. To this possession the law prohibits all direct injury, without regard to the extent, or the motives of the aggressor." The defendant can use his land even to the destruction of the soil for agricultural or building purposes, and the plaintiff has no legal right to control such use, so long as it does not directly infringe his right of domain, or the undisturbed possession and enjoyment of his property; but if the mode of the use is destructive of this absolute right of the plaintiff, the law holds the defendant responsible, irrespective of the questions of malice or negligence, for all damages resulting therefrom. Whilst the right of domain is absolute in the owner of the soil, the law restricts the mode of enjoyment and use; else, unrestrained, it might infringe on or destroy this absolute right in others. A man may use his property as he chooses, seeing to it that such use invades not the paramount right of others to the undisturbed possession and enjoyment of their property. The principle lies at the foundation of a wisely regulated social organization. Without such restraint, a social organization could scarcely exist, respecting the absolute rights of all its members, and protecting the property of each, and his enjoyment of such property, in the soil. Let the principle prevail that an individual may use his land, even though by the manner of using it, it renders insecure or destroys that of his neighbor, whilst repugnant to natural justice, it would invade the relative rights of others as understood and establish-

Farrand *v.* Marshall.

ed by the common law. A man may prosecute such business as he chooses upon his premises, but he cannot erect a nuisance to the annoyance of the adjoining proprietor, even for the purpose of a lawful trade. (*Aldred's case,* 9 *Coke,* 58.) He may excavate a canal, but he cannot cart the dirt or stones upon the land of his neighbor, either by human agency or the force of gunpowder. (*Hay* v. *The Cohoes Company,* 2 *Comst.* 159.) He may use a stream of water accustomed to flow over his land in which his ownership is as absolute as in that of any other land, yet he cannot divert or diminish the flow upon his neighbor's land, such neighbor having the right to the flow of water in his own land without diminution or alteration. (*Arnold* v. *Foot,* 12 *Wend.* 330. *Van Hoesen* v. *Coventry,* 10 *Barb.* 518.) He may dig on his own land, but not so near that of his neighbor as to cause the land of the latter to fall into his pit, thus transferring a portion of another man's land to his own. (2 *Rolle's Abr. Trespass,* I, *pl.* 1. 2 *Comst.* 162.) He may excavate and remove his soil for manufacturing it into brick, but if thereby he removes the natural support of his neighbor's land, so that it cannot stand by its own coherence, and it subsides and falls into the pit made by his excavations, thus disturbing his neighbor in the enjoyment and possession of his property, and damaging him, we think that the law will hold him answerable for such consequences; provided that his neighbor has done nothing with his own land contributing to produce the injury, and in hostility to the legitimate and proper exercise of the pit owner's paramount right to improve his own premises. "I have," says Chancellor Walworth, in *Lasala* v. *Holbrook,* (4 *Paige,* 169,) "a natural right to the use of my land in the situation in which it was placed by nature, surrounded and protected by the soil of the adjacent lots. And the owners of those lots will not be permitted to destroy my land by removing this natural support or barrier. But my neighbor has the right to dig the pit upon his own land, if necessary to its convenient or beneficial use, when it can be done without injury to my land in its natural state. I cannot, therefore, deprive him of this right by erecting a building upon my lot, the weight of which

may cause my land to fall into his pit which he may dig in the proper and legitimate exercise of his previous right to improve his own lot." The doctrine that a landowner may not remove the natural support to the land of an adjoining proprietor without legally subjecting himself to answer for the consequences, " stands," says Lord Campbell, " on natural justice, and is essential to the protection and enjoyment of property in the soil. Although it places a restraint on what a man may do with his own property, it is in accordance with the precept, *sic utere tuo, ut alienum non lædas.*" (*Humphries* v. *Brogden,* 1 *Law & Eq. R.* 243.) " A man," says Chief Justice Parker, " in digging upon his own land is to have regard to the position of his neighbor's land, and the probable consequences to his neighbor if he digs too near his line ; and if he disturbs the natural state of the soil he shall answer in damages ; but he is answerable only for the natural and necessary consequences of his act. The defendants should have anticipated the consequences of digging so near the line ; and they are answerable for the direct consequential damage to the plaintiff." (*Thurston* v. *Hancock,* 12 *Mass. R.* 220.) The same principle which makes a man answerable for the creation of a nuisance on his own land, (such as a swine-sty, a dye-house, (*Aldred's case,* 9 *Coke,* 599,) a tallow furnace, (*Morely* v. *Ragnell, Cro. Car.* 510,) a tan-vat, a smelting house, (*Poynton* v. *Gill,* 1 *Rolle,* 89,) a stable, or any other like offensive thing,) will bind him to respond to an injured landholder, for disturbing him in the lawful use of his land and destroying it. Indeed, in the latter case the exercise of the principle is more imperatively demanded, as the tendency of the act is to deprive the adjoining owner of the beneficial use and enjoyment of his land altogether. It was urged that as, naturally, air is common property and to be enjoyed in common by all, no individual can legally taint it, and for this reason the same principle which forbids the creation of a nuisance on a man's land could not operate to prevent him from digging and removing his own soil for any purpose he choose, even though by so doing he removes from his neighbor's land its natural support, and injures and destroys it. But if air be a thing,

by natural right to be used and enjoyed in common in its natural state, and free to all, so the use of land in the situation in which it was placed by nature is a right; and although by the common law the proprietor of land has the entire dominion, not only of the soil, but of the space above and below the surface, to any extent he may choose to occupy it, in order that this right may be preserved, and this absolute dominion and enjoyment be undisturbed, and not destroyed, each proprietor is bound to use his own in such a way as to effect these ends as for all. It is not a question of absolute and abstract dominion and ownership; but touches the mode in which the thing shall be used, as such use or enjoyment relatively affects others. A proprietor has the entire dominion of his own, and he may use it as his will and inclination dictate, so long as he disturbs not the dominion and right of others to the beneficial use of their soil. He can do nothing to deprive his neighbor of the same rights which he claims for himself. He cannot erect a swine-sty or tallow furnace on the confines of his land, and thus prevent his neighbor from beneficially using his land; nor can he dig away his soil adjoining his neighbor's close, which is the support and barrier of the latter, required and enjoyed since the globe existed in its present form, and thus impair and disturb his neighbor in the use of his property, and perhaps destroy it altogether.

The right to lateral support is regarded as an incident to the land; a right of property " necessarily and naturally attached to the soil." As a distinguished elementary writer remarks, " the negative of this principle would be incompatible with the very security of property, as it is obvious, that if the neighboring owners might excavate their soil on every side up to the boundary line, to an indefinite depth, land thus deprived of support on all sides, could not stand by its own coherence alone." (*Gale & Whateley on Easements*, 216.) The principle is borrowed from the Roman law, and without it there can be no protection to or secure enjoyment of property in the soil. Though it may be invoked now in behalf, and for the protection of the plaintiff, the defendant may to morrow require it as a shield

Farrand *v.* Marshall.

against the aggressions of an adjoining landowner. The defendants' counsel says that he cannot see why a man cannot maintain an action when building his house on the extremity of his own land; but may when there is no house there. As an original question we should certainly doubt the correctness of the position, that though a man may have recently erected a house on the confines of his land, his adjoining neighbor may without being answerable for the consequences should the house fall into the pit, excavate his land to an extraordinary and unreasonable depth, not for the purpose of improving and enjoying it as land is usually enjoyed, but to abstract the soil itself and convert it into brick. It is said that it was the fault of the one building the house, as he could not by his act hinder his neighbor from making the most profitable use of his land. It is difficult to perceive how it is his fault in a legal sense, when lawfully using his land. It was quite as lawful for him to build there as for his neighbor to dig down. Neither could lawfully prevent the other from a reasonable use of his own premises, nor could either make an unreasonable use of his own to the injury of his neighbor. The case in Rolle, and others holding that a man who builds his house upon the margin of his land cannot recover, were thought to fall within a qualification of the maxim *sic utere tuo,* &c., viz, that he who complains of the use which another makes of his own property must himself be free from fault. This qualification was not applied in the case of *Slingsby* v. *Barnard,* (1 *Roll. R.* 88,) which case is mentioned with approbation and relied upon as authority by Baron Vaughn in the recent case, *Brown* v. *Windsor,* (1 *Cromp. & Jer.* 28;) but it was applied in *Thurston* v. *Hancock,* (12 *Mass. Rep.* 220,) and by Chancellor Walworth in *Lasala* v. *Holbrook,* (4 *Paige,* 169.) It may be that it was erroneously applied, but if it were at all important here, it is perhaps too late for us to question the soundness of the application to either of the latter cases. It is enough that this is not a case for the application of the qualification, as the plaintiff is in no way in fault, not having by any act of his increased the lateral pressure or done aught to hinder the defendant from making the most profitable

Farrand *v.* Marshall.

use of his land. The plaintiff's land is in its natural state. No buildings have been erected on its confines, and no additional weight laid thereon to cause it to subside, when its natural support is removed by the defendant's excavations.

The case then is simply this : The plaintiff and defendant are adjoining land owners, in the city of Hudson. The land of the plaintiff, at its extremity, is in its natural state, and supported by the adjacent soil of the defendant. It has always been thus laterally supported. It is a right of the plaintiff that he may enjoy his land in the condition in which it was placed by nature, and no one should be permitted to render his enjoyment of it insecure, or destroy it altogether by removing its natural support. The defendant has been and is engaged in excavating the soil on his own land, which supports the plaintiff's close, and has given notice to the plaintiff that he intends to pursue his excavations up to the line, and to an indefinite depth. Already the plaintiff's land has begun to subside, and if the excavations are continued it will fall over into the pit upon the defendant's land. The defendant's excavations are not made with the view of improving the land, or enjoying it in the manner that land is usually enjoyed. He is engaged in converting the earth that is removed into brick. He may do this, provided that he interferes not with the paramount right of others to the possession and enjoyment of their property, or the natural right which they possess to have their land surrounded and protected by the adjacent soil. He may thus use his own, but if the consequences are that he injures the plaintiff by such use, by causing the lands of the latter to subside and fall over on the defendant's land, an action may be maintained for the damage sustained by the subsidence. The law, whilst it gives entire dominion over his own soil, will restrain him in the mode of using or enjoying his property, if such mode of enjoyment infringe upon or violate the right of domain in others. This right is violated by any act of an individual which shall transfer the adjacent proprietor's soil to his own, or deprive the latter of the beneficial use of his land. The defendant has for some time past been engaged in his excavations. He is approaching the

Mallory *v.* Norton.

western line of the plaintiff's lot.   If permitted to continue the excavations as contemplated, the whole western extremity of the plaintiff's land will .subside and fall into the pit made by the excavations.   This ought not to be permitted; and we entertain no doubt of the power to restrain the defendant from excavating or removing any soil adjoining the plaintiff's premises, which shall cause the plaintiff's land, by reason of the withdrawal of its lateral support, to fall away or subside.   The argument based on the inconvenience of applying the principle discussed to proprietors of city lots, though put forth in the case of *Radcliff's Ex'rs* v. *The Mayor of Brooklyn,* under the sanction of a distinguished name, is unsatisfactory to overthrow rights "standing on natural justice and essential to the protection and enjoyment of property in the soil."     .

The order of the special term, overruling the demurrer to the complaint of the plaintiff, must be affirmed.

[ALBANY GENERAL TERM, September 3, 1855.   *Wright, Harris* and *Watson,* Justices.]