## PIXLEY *vs.* CLARK and others.

Individuals owning the bed of a stream, and each bank thereof, have the right to build a dam and embankment, and raise the water of the stream as high as they please, subject only to the restriction resting upon all, so to enjoy their own property as not to injure that of another person, with the qualifications and limitations incident to that rule of property.

And if they, in the exercise of that right, build, with due care, an embankment to prevent the water, when raised by their dam above the natural banks of the stream, from overflowing the lands of adjacent owners, and in consequence of raising their dam, the water finds its way through their own natural soil and below the surface thereof, by filtration, percolation or otherwise, to the land of an adjacent proprietor, the owners of such dam and embankment are not, in the absence of any unskillfulness, negligence or malice, liable to such adjacent proprietor for any damage he may sustain thereby; the injury being *damnum absque injuria.*

A party is liable for any defect in his artificial erections, which might have been remedied by reasonable care and skill, but not for any defect in the natural banks of a stream.

Where persons have the right to use the waters of a stream, for manufacturing purposes, the right to dam the water and detain it a reasonable time, follows as a necessary incident to the right of user; and they cannot be compelled to make an artificial reservoir for that purpose.

The banks of the stream are theirs, for that purpose; and so long as the water is only nominally detained for this lawful, customary and proper purpose, the adjacent land owners must submit to the indirect and consequential damages resulting to their lands from such use.

THE plaintiff brought his action on the case, for obstructing the waters of the Oriskany creek by means of a dam, and causing them to set back upon the premises of the plaintiff, to his damage. Upon the trial, at the Oneida circuit, in October, 1859, before ALLEN, justice, and a jury, it appeared that the defendants were the owners of a factory water privilege on the Oriskany creek. The plaintiff owned land above the dam, on the west side of the creek, and separated from it by a narrow strip of land, sold by him to the defendants, upon which the latter had built a permanent embankment to prevent the water, when raised by the dam above the natural banks of the creek, from overflowing the land of the plaintiff. He endeavored to show that the water confined

by the dam and embankment, penetrated through the soil underneath the embankment, and made the plaintiff's land wet and less valuable. The plaintiff was nonsuited upon the trial, and he now moved for a new trial, on a bill of exceptions. °

*F. Kernan*, for the plaintiff.

*D. Pratt*, for the defendants.

*By the Court*, ALLEN, J. There may have been some question whether the standing water, the subject of complaint, was the water of the creek which, obstructed in its natural passage, had penetrated through the porous soil on the plaintiff's land, or was the surface water which accumulated by reason of the obstructed natural drainage into the creek. But the case was disposed of upon a theory which excludes that question from present consideration. The judge held and decided: (1.) That there was evidence to show that the raising of the dam by the defendants in 1857 set the water back, so that it rose opposite the plaintiff's land above the natural bank of the stream and against the artificial embankment; and he disposed of the cause as if that fact had been found by the jury. (2.) That there was no evidence to go to the jury that the flow of water by which the plaintiff's land was soaked ran through the embankment, or between the embankment and the natural bank of the stream; and he refused to allow the plaintiff to go to the jury upon these questions. (3.) That if by raising the defendants' dam, the water found its way through the natural soil of the defendants, and below the surface thereof, by filtration, percolation or otherwise, the defendants were not liable for any damage the plaintiff might sustain thereby.

A question was made upon the trial, and is renewed here, upon an offer of the plaintiff to prove that, after the erection of the embankment and the raising of the dam, the sur-

face water did not run off as freely, but stood upon the ground until it dried up. The complaint was for obstructing the waters of the creek and causing them to flow back upon and over the land of the plaintiff—an entirely distinct and different cause of action from that embraced in the offer—and the evidence was properly rejected. The obstructing the flow, or the diversion, of a stream of water, by means of which injury is caused to the land of another, is quite another thing from destroying or disturbing the natural and usual drainage of the same land, calling for different evidence, and admitting of entirely different defenses. The cause of action offered to be proved differed in its entire scope and meaning from that alleged in the complaint, and would have depended on other and different principles for its maintenance.

There was no error in holding that there was no evidence to be submitted to the jury that the plaintiff's land was soaked by water passing through the embankment, or between it and the natural bank; or in other words, that the water found in and upon the plaintiff's land flowed over the natural banks of the stream. The plaintiff gave no evidence tending to show that the embankment was improperly constructed or insufficient to protect the land of the plaintiff from the waters of the creek, and did not attempt to show that water passed through it, or between it and the natural bank. His evidence showed the character of the soil, and that the water would readily penetrate it. The defendant gave affirmative evidence, which was undisputed, that the water did not pass onto the land over the banks of the creek. A verdict against the evidence would have been set aside, and therefore the judge properly declined to submit it to the jury.

The principal question is whether the defendants are liable to the plaintiff for the consequential damage resulting to him from the raising of the water, and keeping it at the level of the natural banks of the stream. Assuming that the water did not pass over the banks, either through the wall or other-

Pixley *v*. Clark.

wise, the raising of the embankments may be considered an act of due care. If the water found its way onto the plaintiff's land through the natural soil of the banks, and not otherwise, it is not material whether the water was or might have been kept at a higher point, inasmuch as the bank of the stream was higher than the plaintiff's land. It is not claimed that the defendants did negligently, carelessly or improperly that which they had a right to do with proper care and in a proper manner. Neither is it claimed that the acts complained of were done maliciously. In other words, the action is not based upon the negligence, unskillfulness or malice of the defendants. The right of the defendants, as riparian owners, to use their own land, including the bed of the stream with the waters flowing them, for the purposes and in the manner proved and to the prejudice of the plaintiff, is controverted by the latter, and the action hinges upon this alleged want of right. The action and the claim are of the first impression, so far as I have been able to discover with the aid of the researches of counsel, and if sustained, call for a novel application of established maxims and principles of law. Controversies respecting the enjoyment and user or diversion of streams have ordinarily arisen between different proprietors of such streams and of the lands over or through which they have flowed, and actions for obstructions of the flow have ordinarily been at the suit of riparian owners, who have in some way sustained a direct and immediate injury. The plaintiff here claims no right to the water or its use, and his lands are separated from the bank of the stream by the land of the defendants. His damages are consequential, and not the immediate and direct result of the act of the defendants, but rather the result or consequence of the character of the soil composing the banks of the stream, upon his own premises. If this action can be maintained, then every one whose lands are in any degree injuriously affected, and either made more wet or rendered less easy of drainage by reason of the raising the waters of a stream within

its banks, the channel of which is the natural way of escape for the surplus water, may have an action; and whether the lands thus affected are more or less remote from the stream is not material, except as the distance may make it more or less difficult to point with certainty to the cause of this remote and consequential injury.

The defendants, owning the bed of the stream and each bank, had the right to built their dam and embankment and raise the water of the stream as high as they pleased, subject only to the restriction resting upon all, so to enjoy their own property as not to injure that of another person, with the qualifications and limitations incident to that rule of property. (*Broom's Leg. Max.* 172, 161.)

The rule between different proprietors of land upon a stream is well settled, and each proprietor has a right to the advantage of the stream flowing in its natural course over his land, and to use the same as he pleases for any purpose of his own, provided that such use be not inconsistent with a similar right in the proprietor of the land above or below. Here there is no complaint that the defendants restrain the flow of the stream, or diminish the quantity, or injure the quality of the water to the prejudice of any proprietor below them, or throw the water back upon the land of any proprietor above them. But the claim is that they are responsible for the defects in the natural banks of the stream, and their insufficiency, by reason of the porous character of the soil, to hold the water, without leakage, at the point to which they have a right to raise it for use upon their own premises. This, under the circumstances, is a violation of the letter of the maxim, *Sic utere tuo ut alienum non lœdas.* (9 *Rep.* 59.) But this maxim has never been literally enforced; for in the exercise of very many, if not most of the rights of property, there is more or less interference with the rights of others, and the rule has been construed with reference to the natural rights of all. Each man holds his property subject to the consequental injury which may result from the reasonable

and proper use and enjoyment of the land of his neighbor. "Although some conflict may be produced in the use and enjoyment of such rights, it cannot be considered, in judgment of law, an infringement of the right. If it becomes less useful to one, in consequence of the enjoyment by another, it is by accident and because it is dependent on the exercise of equal rights of others." (*Per Thompson, C. J., Platt* v. *Root,* 15 *John.* 213.) In the case cited the plaintiff was in some degree injured by the acts of the defendant in detaining the water of a stream from the plaintiff's mill, while the pond of the defendant was filling. At one time for nearly three days, and on other occasions for a less time, the plaintiff's customers had been obliged to carry their grain to other mills, and yet no action would lie. The reason is obvious. Each was in the exercise of his individual rights, and in a reasonable and proper manner. So, too, the erection of a building or other structure may obstruct the lights or interfere with the privacy of a neighbor, or shade his grounds and render them less productive, but the acts are *damnum absque injuria,* and no action lies. (*Mahan* v. *Brown,* 13 *Wend.* 261.) *Thurston* v. *Hancock,* (12 *Mass. R.* 220,) decided that where one built a house on his own land within ten feet of the boundary line, and ten years after the owner of the land adjoining dug so deep into his own land as to endanger the house, and the owner of the house left it and took it down, no action lay at the suit of the owner of the house for the damage done to the house. But on the authority of *Rolle's Abr.* 565, it was held that he was entitled to an action for the damage arising from the falling of his natural soil into the pit so dug. It is claimed that every person has a right to the use of his land in the situation in which it was placed by nature, surrounded and protected by the soil of the adjacent lots, and that the owners of those lots will not be permitted to destroy the land by removing this natural support or barrier; and to this effect is the doctrine of Rolle, and it was affirmed by the chancellor in *Lasala* v. *Holbrook,*

(4 *Paige*, 169,) although it was not necessary to the decision of that case. Lord Tenterden, C. J., in giving judgment in *Wyatt* v. *Harrison*, (3 *B. & Ad.* 871,) cautiously refrains from expressing an opinion upon the point; and in *Radcliff's Ex'rs* v. *Mayor &c. of Brooklyn*, (4 *Comst.* 195,) the doctrine and the deductions from it are expressly repudiated. Bronson, Ch. J. says: "I think the law has superseded the necessity for negotiation, by giving every man such a title to his own land that he may use it for all the purposes to which such land is usually applied, without being answerable for consequences; provided he exercises proper care and skill to prevent any unnecessary injury to the adjoining land owner. The saying of Rolle may have been a wise one in his day, but it is not well adapted to our times." He recognizes the principle that " a man may enjoy his land in the way such property is usually enjoyed, without being answerable for the indirect or consequential damages which may be sustained by an adjoining land owner." It is a well received principle that "every proprietor has the entire dominion over the whole of his own estate." (*Howland* v. *Vincent*, 10 *Metc.* 371.) It would follow that the defendants, owning the banks of the Oriskany creek, have the right, in the proper and lawful use of the waters of the creek, to fill their banks, and the injury caused to the land owners of the neighborhood is *damnum absque injuria*. The extent to which the dictum of *Rolle* and the case of *Thurston* v. *Hancock* can be carried, is to give the party whose land is deprived of its natural support by the excavations of his neighbor an action for the soil actually transferred to his neighbor, and of which the owner is deprived. The adjacent land owner could not abstract any portion of the soil, nor cast any thing upon the ground. Subject to this qualification, a man may use his land in a reasonable manner, according to his pleasure. (*Hay* v. *The Cohoes Co.*, 2 *Comst.* 160, 162, *per Gardner, J.; and see note to Brown* v. *Winslow*, 1 *C. & J.* 29.) The principal case was

decided on the ground that the plaintiff had an easement in the premises of the defendant. In *Panton* v. *Holland,* (17 *John.* 92,) the defendant was held liable for negligence in the performance of an act otherwise lawful. Woodworth, J. says : " On reviewing the cases, I am of opinion that no man is answerable in damages for the reasonable exercise of a right when it is accompanied by a cautious regard for the rights of others ; when there is no just ground for the charge of negligence or unskillfulness ; and when the act is not done maliciously." *Smith* v. *Adams,* (6 *Paige,* 435,) was the case of the diversion of the waters of a hidden stream which supplied a spring from which the complainant's cloth dressing establishment, situated below, was supplied with water. The bill was dismissed for want of jurisdiction, but the rule laid down by the chancellor may be regarded as authority, without advancing the argument in this case ; for all that was decided by the chancellor was, that under the circumstances of that case there was no distinction between streams flowing upon the surface and those flowing beneath the surface, as regards the rights of owners of land over or through which it flowed in its natural channel.

*Cooper* v. *Barker* (3 *Taunt.* 99) was disposed of, mainly, upon the form of the issues, rather than upon the merits. But the most that was decided was, that when a party had an artificial channel through his own fields, in a porous soil, through the banks of which the water penetrated and passed through the soil and into the cellar of his neighbor, an action would lie at the suit of the latter. The question of liability of an owner of the bed of a natural stream, for consequences resulting from the porous character of its banks, was not mooted, and was not considered. The case was more like that of *Carhart* v. *The Auburn Gas Light Company,* (22 *Barb.* 297,) where the defendants were held liable for contaminating and rendering unfit for use the waters of a stream, by suffering to flow from their works, erected a short distance

from the banks of the stream, noxious and offensive substances, which made the water unfit for use upon the premises of the plaintiff, situated below, upon the same stream. Neither case called for a consideration of the question made here, which, if decided for the plaintiff, would require every riparian owner, seeking to use the waters of a stream by means of a pond, to see that the natural banks were made water tight; and even then he would be liable to the adjacent land owners, if their lands were less easily drained, or the surface water would not so easily pass off as when the waters of the stream were permitted to flow off without obstruction. A party is liable for any defect in his artificial erections, which might have been remedied by reasonable care and skill, but not for any defects in the natural banks of a stream. The cases most analogous to this are those in which the courts have decided that the owner of land through which water flows in a subterraneous course, has no right or interest in it which gives him an action against one who, in conducting his agricultural or other lawful operations on his own land, draws away the water and leaves a well dry upon the land of the first mentioned owner. (*Acton* v. *Blondell*, 12 *M. & W*. 324. *Roath* v. *Driscoll*, 20 *Conn. Rep*. 524. *Greenleaf* v. *Francis*, 18 *Pick*. 117.) But the principles involved are not the same. The right of the defendants to use the water of the stream for their manufacturing purposes is undisputed, and the right to dam the water and detain it a reasonable time follows as a necessary incident to the right of user, (*Van Hoesen* v. *Coventry*, 10 *Barb*. 518;) and they cannot be compelled to make an artificial reservoir for that purpose. The banks of the stream are theirs for that purpose; and so long as the water is only nominally detained for this lawful, customary and proper purpose, the adjacent land owners must submit to the indirect and consequential damages resulting to their lands from this use. A proper regard to the natural

rights of all will not tolerate any other rule. I am of the opinion that the case was properly disposed of at the circuit, and that a new trial should be denied.

[ONONDAGA GENERAL TERM, July 3, 1860. *Allen, Mullin* and *Morgan,* Justices.]