ISAAC V. PLACE, Respondent, v. SAMUEL MINSTER et al., Appellants.

Defendants, S. M. & K., combined together to obtain the goods of plaintiff without paying for them. The plan adopted was that S. should purchase the goods on credit, make a formal sale of them to M. & K., and then abscond. This plan was carried out. *Held* (REYNOLDS, C., dissenting), that an action for conspiracy to defraud could be maintained, although no affirmative fraudulent representations were made by S. to induce a credit; that a concealment of the true nature of the transaction was sufficient.

A variation between the complaint and the proof as to the details of a fraudulent conspiracy, and the mode in which it is carried out, if the proof establishes such a conspiracy and an injury to plaintiff consequent upon the carrying out of the fraud, is not a failure of proof within the meaning of the Code (§ 171), and will not justify a dismissal of the complaint. Without proof "to the satisfaction of the court" that defendant has been misled, the variance is to be deemed immaterial, and no amendment of the complaint is necessary.

The authorities upon the subject of variance collated.

In an action for conspiracy, it is within the discretion of the trial court to allow evidence of the declarations of one of the alleged conspirators to be given prior to proof of the conspiracy, and conditional upon the production of such proof thereafter.

The rule requiring such preliminary proof should not be departed from, however, save under particular and urgent circumstances.

Plaintiff's evidence tended to show that S. stated to him that he had orders from M. for the goods. Plaintiff was allowed to prove, under objection and exception, that he charged the goods to M. *Held,* no error; that the evidence was admissible as showing that plaintiff relied on the statements of S.

(Argued October 1, 1874; decided January term, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiff entered upon a verdict, and affirming an order denying a motion for a new trial.

This action was brought for an alleged conspiracy, by which a quantity of gloves were fraudulently obtained from the plaintiff by the defendants.

The defendants, originally, were Lazarus Minster, Samuel Minster, Caroline Minster, Morris Kohn and James Sherlock. The last named defendant was not served.

At the first trial of the cause, which resulted in a disagreement of the jury, the complaint was dismissed as against Lazarus Minster and Caroline Minster, for want of evidence against them.

The complaint set forth that the defendants procured goods of the plaintiff to the amount of about $11,000, fraudulently, and with the intent to cheat him out of them and not pay for them. The charge was founded on the following alleged state of facts: Before and during the month of June, 1865, the plaintiff resided in the village of Gloversville, in the county of Fulton, and then was, and still is, engaged in the business of manufacturing and selling gloves and mittens. The defendants, Minster and Kohn, resided in the city of New York, and Sherlock resided in Gloversville. The Minsters and Kohn were then carrying on a store for the sale of gloves and mittens. This store was conducted in the name of L. Minster, but the business was entirely done and conducted by the defendants, L. Minster, C. Minster and Morris Kohn, for the benefit of all the defendants, except Sherlock.

In June, 1865, the parties defendant conspired for the fraudulent purpose and with the intent to cheat and defraud the plaintiff out of the value of his goods, intending never to pay him for them. With that view, Sherlock was employed by the other defendants to obtain from the plaintiff, and cause to be shipped and delivered by him at the store conducted in the name of L. Minster, such goods as the defendant Caroline Minster should order and direct upon the false and fraudulent representation and pretence that L. Minster, or the person conducting the store, had ordered and directed Sherlock to purchase the goods, and that the same would be paid for within thirty or sixty days from their delivery, and at the same time to conceal from the plaintiff that Caroline Minster had ordered or directed the goods to be shipped as before stated. It was also a part of the design that Minster and Kohn should pay to Sherlock a liberal compensation for his services, and assist him to abscond from the State and country so that the plaintiff could not prosecute him for the goods, or for obtaining them by fraud ; and in case he should attempt to recover the price from the other defendants, they could defeat the claim on the ground that they had never ordered the goods, or authorized Sherlock to purchase them.

It was then claimed that this fraudulent design was carried into effect, Caroline Minster giving the orders, Sherlock executing them, and the plaintiff delivering large lots of gloves, amounting in value to $10,876, to the Minsters and Kohn, who received them, knowing Sherlock's fraudulent intent, and with a preconceived design not to pay for them, and with intent to cheat and defraud the plaintiff and convert them to their own use. The goods, it was said, were never paid for, and Sherlock, in pursuance of the conspiracy, left the country.

The answer of the defendants denied the allegations of fraud, and affirmed that Sherlock purchased the goods on his own behalf, and that they purchased from him for a valuable consideration, and without notice.

At the trial, the testimony offered by the plaintiff did not tend to establish the fraud in the precise form in which it was

alleged. It was, however, claimed, by plaintiff's counsel, that the fraud was substantially proved, the variation being only in details and circumstances.

The questions presented to this court arise on a refusal to nonsuit and dismiss the complaint, and upon an alleged erroneous exercise of the power of amendment of the complaint, and also upon the admission of evidence, as well as a refusal to strike out testimony. The facts relating to these questions are sufficiently presented in the opinion.

*Amasa J. Parker* and *Geo. M. Curtis* for the appellant. The court erred in admitting the declarations of one of the alleged conspirators as against the other defendants, and in refusing to strike out the same. (*Peck* v. *Yorks*, 47 Barb., 131, 134; *Jones* v. *Hurlburt*, 39 id., 403, 409; *Cuyler* v. *McCartney*, 33 id., 165, 173; *Brush* v. *Holland*, 3 Bradf., 240; *Williams* v. *Fitch*, 18 N. Y., 546, 552; *Myers* v. *Malcolm*, 6 Hill, 292, 296; *Underhill* v. *N. Y. and H. R. R. Co.*, 21 Barb., 489, 496; *Band* v. *Gillett*, 47 N. Y., 186; *Osgood* v. *Manhattan Co.*, 3 Cow., 612.) The court erred in refusing to require plaintiff to specify in what particulars the complaint was amended. (*Egert* v. *Wicker*, 10 How., 193, 197; *Un. Bk.* v. *Mott*, 18 id., 506, 507; *Waldhein* v. *Sichel*, 1 Hilt., 45, 46; *Saltus* v. *Genin*, 3 Bosw., 250, 262; *Catlin* v. *Hansen*, 1 Duer, 309, 327; *Whittaker* v. *Merrill*, 30 Barb., 389, 391; *Moore* v. *McKibbin*, 33 id., 246, 249; *Gaspar* v. *Adams*, 28 id., 440, 444; *Walter* v. *Bennett*, 16 N. Y., 250, 254; *T. and B. R. R. Co.* v. *Tibbits*, 11 How., 168, 170; *Ford* v. *Ford*, 35 id., 321, 325; *Ross* v. *Mather*, 51 id., 108.)

*Samuel Hand* for the respondent. The motion for a nonsuit was properly denied. (*Ash* v. *Putnam*, 1 Hill, 302; *Acker* v. *Campbell*, 23 Wend., 372; *Newman* v. *Cordell*, 43 Barb., 448; *Pequeno* v. *Taylor*, 38 id., 375; *Hubbard* v. *Briggs*, 31 N. Y., 518; *Knapp* v. *People*, 27 id., 277; *Dunn* v. *People*, 29 id., 523; *Conrad* v. *Williams*, 6 Hill, 444; *Woodin* v. *People*, 1 Park. Cr., 464; *Hinde* v. *Smith*, 6

Lans., 464.) What took place between plaintiff and Sherlock when the goods were ordered was a part of the *res gestœ,* and properly received in evidence. (*Robbins* v. *Richardson,* 2 Bosw., 248.) There was no error in allowing the amendment to the complaint to conform to the proof. (Code, § 173; *Sharp* v. *Mayor, etc., N. Y.,* 40 Barb., 270; *Catlin* v. *Gunter,* 1 Kern., 368; 4 Wait's Pr., 695.)

DWIGHT, C. The defendants urge that the judge at the trial should have nonsuited the plaintiff on the ground that there was no evidence to go to the jury to substantiate the charge made in the complaint. They urge this on two grounds. One is, that if the testimony of the plaintiff's witnesses were wholly credible, there is a clear departure in the testimony from the complaint, so that it is "improved in its entire scope and meaning." The other is, that the plaintiff's case rests on the testimony of an accomplice in the fraud, James Sherlock, and that he has so contradicted himself and was so influenced by fear or the hope of reward that his statements should not have been taken into account, but that the court should have rejected them as matter of law. The first of these objections to the plaintiff's recovery requires an examination, to some .extent, of the testimony. The plaintiff's theory of the case has been sufficiently set forth in the statement of facts.

The testimony, assuming for the moment that full credit should be given to it, discloses that the defendants L. Minster and Kohn did not specifically direct the goods to be purchased in L. Minster's name. The plaintiff's own testimony is, that Sherlock told him that he had got orders from L. Minster (in whose name L. Minster and Kohn were doing business). He packed the goods by Sherlock's direction, and shipped them to L. Minster. The first order was sent 20th June, 1865, to the value of $2,814, together with samples worth seventy dollars. On July seventh Sherlock told the plaintiff that he was going to New York and wished more samples. He then said that he had another order for another

lot of gloves, and they were directed and shipped as before to the amount of $2,279, together with samples worth seventy-eight dollars. Other shipments were made on similar orders down to the fourth or fifth of August. On the last of these days, he being in New York, received from Sherlock a check signed L. Minster for $1,200. Shortly after August 11, 1865, the plaintiff saw S. Minster at his store and asked him if he had paid Sherlock for the goods they had had of himself. Minster denied that they had bought any goods of the plaintiff, and said that they did not owe Sherlock any thing.

On cross-examination the plaintiff testified that while he was in New York looking after the payment of his bill, he saw Minster in his store, but had no conversation with him about the goods, although he had then sent more than half of them. As far as is shown, not a word passed between him and the defendants as to their connection with the transactions, though the opportunities for such inquiry were at hand, and the sales were large enough to have attracted a seller's attention to their prompt adjustment, and payment by Sherlock was but partial and dilatory. It is true that the plaintiff testifies that bills were originally made out in L. Minster's name. These were, however, subsequently surrendered to Sherlock on his representation that Minster would not pay unless bills were made out in Sherlock's name. This was done accordingly, although it is charged by the plaintiff that this was a part of the fraudulent conspiracy to obtain his goods without payment.

Without further detail of the testimony in this branch of the case, I think it clear that there was no specific understanding that the goods should be sold to L. Minster, as charged in the complaint. The most that can be said is, that there was an ambiguity of expression in the language of Sherlock, and that the plaintiff may have supposed that there was an order on the part of Minster for the goods, though there was no direct statement that the goods were sold to him. All that was proved with any distinctness was that there was a conspiracy between Sherlock and L. Minster and Kohn that the

goods should be sold to Sherlock and that he should go through the form of selling them to Minster and Kohn; that Sherlock should then abscond from the country and conceal himself in such a way that no testimony from him would be available, and that Minster and Kohn would then be able to represent that they bought the goods from Sherlock, and were in no respect liable to the plaintiff. Such a fraud would differ from the one charged in the complaint, in the fact that in *that* the conspiracy was alleged to be to sell to L. Minster, who was no member of the firm of Minster & Kohn, and who might deny the sale, while, as proved, Sherlock was to be the purchaser, and a subordinate contract was to be entered into as between him and the defendants.

That such a combination as this proved would amount to a conspiracy in law is deducible from the authorities. The essence of a conspiracy, so far as it justifies a civil action for damages, is a concert or combination to defraud or to cause other injury to person or property, which actually results in damage to the person or property of the person injured or defrauded. All the necessary elements are present, according to the case made by the plaintiff. (*Page* v. *Parker,* 43 N. H., 363; *Wiggins* v. *Leonard,* 9 Iowa, 195; *Whitman* v. *Spencer,* 2 R. I., 124; *Walsham* v. *Stainton,* 33 Law J. Ch., 68.)

The act charged to result in a conspiracy may, in one aspect of the case, be innocent; in another it may be fraudulent. It will be necessary to consider the intent with which the act was done, so that the question will be peculiarly for the consideration of the jury. In *Whitman* v. *Spencer* (*supra*), a New York merchant purchased goods from a dealer in Providence, Rhode Island, to the amount of $6,000, upon credit, and assigned them, without consideration, by a clear bill of sale, and the assignee removed the goods to Providence, where they would be free from attachment, and sold them there, saying that he intended to pay the creditors of the New York merchant, whose claims he had guaranteed, at the same time refusing to give a list of the creditors, such list being also refused by his vendor. It was held under this state of

facts that the question whether there was a conspiracy or not depended solely on the intent. If the goods were taken to Providence with the *bona fide* intent to sell them for the benefit of the creditors, there was no conspiracy. On the other hand, if there was an intent to secrete them a conspiracy existed. The whole matter accordingly, it was considered, must go to the jury. In the case at bar, if Sherlock and the defendants contrived a plan whereby Sherlock was to get the title to the goods and then go through the form of sale to the defendants, and he was to abscond, so that the true history of the transaction could not be traced, and the defendants could get the goods without paying for them, the conspiracy would clearly be established. This would be so, though Sherlock was the only active participator in the fraudulent statements, and the defendants were wholly passive and silent as between themselves and the plaintiff. (*Page* v. *Parker, supra.*) It would seem to be a fraudulent conspiracy, even though Sherlock made no affirmative false statement to the plaintiff, but simply bought the goods with a preconceived design, as between himself and the defendants not to pay for them, and to put out of the way all accessible evidence of their wrongful act. Such a fraudulent concealment of the true nature of a dealing, which on its face appears to be an ordinary sale, would be a fraud of a deep dye. Designing men cannot be allowed to put forth a supple tool to do their bidding, knowingly take the profits of a concocted wrong, remain silent and go unwhipt of justice. The action for conspiracy is devised for just such cases. It reaches the silent partners in the transaction, and causes them to disgorge the profits of their hidden guilt. It is, thus, a highly remedial action, and in no respects to be discouraged, when resorted to in cases which fairly admit of its application. If the testimony in this cause most favorable to the plaintiff is true, the present is emphatically one of the cases to which the law should be applied with an unsparing hand, as the more active agent was plainly weak and vacillating, and only upheld by the strong will and fortifying purpose of men of bolder design and firmer nerve.

The correctness of these views is distinctly sustained by the judgment in *Moore* v. *Tracy* (7 Wendell, 229). In that case Tracy brought an action on the case for a conspiracy against W. and A. Moore, charging them with entering into a fraudulent combination with one J. Van Valkenburgh to the following effect: Van Valkenburgh was to buy and obtain of the plaintiff various goods under the pretence of a fair and *bona fide* purchase, but not intending to pay for the same, and the goods so obtained were to be delivered into the possession of the defendants; Van Valkenburgh should then declare himself insolvent, and obtain a discharge under the insolvent act, and thereby defeat the collection of the plaintiff's demand. It was further charged that in pursuance of such conspiracy, Van Valkenburgh, under the pretence of a fair and honest purchase, obtained from the plaintiff certain articles of property, which were delivered to the defendants, or one of them, and by them disposed of to their own use. The facts alleged in the complaint having been proved at the trial, mainly by the testimony of the co-conspirator, Van Valkenburgh, the court, on appeal, held that the complaint disclosed a good cause of action, and affirmed a judgment rendered against the Moores. *Pasley* v. *Freeman* (3 Term R., 56) was, among other cases, relied upon. It was said: " In the case at bar the defendants reaped all the fruits of the fraud, but had no personal communication with the plaintiff. The declaration does not charge them with doing any act to induce the plaintiff to sell his goods to Van Valkenburgh, but he must be considered their *agent*, and his false and fraudulent representations (that he intended to and would pay for the goods, when it had previously been determined between him and the defendants that he should immediately put them into the hands of the defendants and take the benefit of the insolvent act) must be considered the *acts* and *declarations* of the defendants themselves." (P. 235.)

The parallel between the case just cited and that before this court is very close. In the present case there was no direct act between Minster and Kohn and the plaintiff. All the

inducement to sell came from Sherlock. Yet if the testimony is true, those persons reaped the benefit of the fraud, and combined with him to commit it. His act must be deemed to be their act, and if the case of *Moore* v. *Tracy* is to be followed, they must respond to the plaintiff.

Assuming, then, that the testimony, as actually given in, established a case of fraudulent conspiracy, did it differ so much from that alleged in the complaint that the variance is fatal under our practice? It seems to me that this difference does not present a case where the cause of action is " unproved in its entire scope and meaning," within the construction of the Code. (§ 171.) It is rather a variation of detail, or in the mode in which the fraud is carried into effect. The elements of fraud are present under either aspect of the case; there is a false representation, fraudulent intent, a preconceived design not to pay for the goods, a material statement and a reliance by the plaintiff upon it, and consequent injury to him in parting with his property. There is, undoubtedly, a variance, but no absolute departure from the original theory of the case. It will not be expedient to hold to a rule so rigorous as that for which the defendants contend, in cases of alleged fraud involving a conspiracy. The evidence is all in the breasts of the alleged conspirators. The plaintiff is groping in the dark. He obtains an imperfect version of the facts, sufficiently distinct, however, to torture one of the conspirators, ultimately, to divulge them in full. These are drawn forth slowly and imperfectly, with attempts at concealment or with actual prevarication. He finally became so completely entangled in the meshes of a net of his own devising, that he finds but one way out. He cuts the cords and sets himself free. For the first time, he tells a straightforward story, differing from the partial account on which the plaintiff framed his complaint. If all the elements of fraud are found in the case as proved, shall the complaint be dismissed, and the plaintiff be required to commence a new action? I think not. If the defendants feel themselves aggrieved, they may make an affidavit, under section 169 of the Code, showing that they have been misled

to their prejudice; whereupon the court may allow them to amend on such terms as may be just, to enable them to prepare their defence according to the new phase which the plaintiff's case has assumed. Without such proof *aliunde,* or from extraneous sources, the variance is immaterial. Such is the rule of the Code, however it may depart from the doctrines of the common law. (*Catlin* v. *Gunter,* 11 N. Y., 374, 375; *Sharp* v. *Mayor of New York,* 40 Barb., 270.) I have not been able, after considerable examination, to find any authority to justify the court in the case at bar in holding that there has been a failure of proof. Most of the cases in which the subject has been discussed or alluded to are equity causes, in which it has been insisted, on the part of the defendant, that the plaintiff could only recover *secundum allegata et probata.* It does not, however, appear that this well-established rule of equity practice requires a detail of all the circumstances constituting the fraud. That may be alleged in general terms, and the facts may be relied upon as evidence to establish the charge. Even conceding that a more rigorous view may at one time have been taken of the subject, yet the more liberal practice in modern times enables a court, by means of an amendment, to prevent a party from being taken by surprise, which was the points underlying the rigor of the earlier rule. (*Smith* v. *Kay,* 7 House of Lords Cases, 752.) In that case there was a bill to set aside securities. The petitioner alleged that "when he executed the securities he was led by the defendant to believe, and did in fact believe, that the defendants had become possessed of the bills for the amount of which such securities were given to him" (in a certain manner which was not the true manner), "and under the circumstances aforesaid, the execution of the securities was obtained by fraud and misrepresentation or concealment of the real facts." It was held that it was too late, after evidence and hearing, to raise any objection to this mode of pleading. Lord CRANWORTH, a great authority, was of opinion that the pleading would have been good even on special demurrer. It was further held, that it was unnecessary to prove the particular manner in which the defend-

ant had become possessed of the bills, if it was in some manner indicative of fraud. The meaning of the court, in this case, is further shown by a reference to cases where the allegations were not deemed sufficient. Thus, in *National Exchange Company* v. *Drew* (2 Macq. Scotch App., 103), the validity of deeds was sought to be impeached on the ground that they had been obtained by a "tissue of falsehoods." The court held that this would not do without more, as the defendant might not know what was meant by it. So in *Bainbrigge* v. *Moss* (3 Jur. [N. S.], 58), in a bill to set aside a deed of compromise, the allegation was that Moss, who had insisted upon the testator being *non compos*, "knew that he was sane." It was held that this was not a sufficient allegation of fraud, as it admitted no traverse of a fact. These cases were distinguished by the judges from the allegation in *Smith* v. *Kay* (*supra*). That was considered to be equivalent to this statement: "You led me to believe that when I was doing a particular act, I was doing something different from what you knew I was doing." This very general form of statement was a sufficient allegation of fraud. Any detail of circumstances beyond this need not be proved.

The court in this same case sanctioned the pleading in *Williams* v. *Earl of Jersey* (Craig & Phil., 91). In this case, the defendant had brought an action at law to recover damages for an alleged nuisance to his lands, occasioned by the erection of smelting works. The defendant in that action filed a bill in equity to prevent Lord Jersey from prosecuting his action at law. In this bill he simply alleged that Lord Jersey "encouraged" the erection of the works and the expenditure upon them. There was no statement as to the degree or circumstances of the "encouragement." The court, on demurrer, held the pleading sufficient.

It appears from these cases that no detail of circumstances in actions for fraud is essential to the cause of action. As it is not necessary that they be alleged, it is not requisite to prove them if alleged. At most, the difference between the allegation and the proof would be but a technical variance.

At the same time, it is of course necessary to prove fraud, and the plaintiff could not recover on entirely different grounds, unless there were additional averments in the bill or complaint upon which such recovery can be had. (*Wilde* v. *Gibson*, 1 H. of L. Cas., 604.) In that case fraud was alleged, but there was no proof that the defendant had that knowledge which would show that he was guilty of any fraudulent representation. As there were no other allegations but those of fraud, the bill was dismissed. (See, also, *Archbold* v. *Comrs. of Bequests*, 2 H. of L. Cas., 440, 460.) The rule is stated with great precision and caution in *Price* v. *Berrington* (3 M. & G., 486, 499) : "It is now an established doctrine of this court that where the bill sets up a case of actual fraud, and makes that the ground of the prayer for relief, the plaintiff is not entitled to a decree by establishing some one or more of the facts, *quite independent of fraud*, but which might of themselves create a case under a totally distinct head of equity from that which would be applicable to the case of fraud originally stated." This doctrine is referred to with approval by the Supreme Court of the United States, in *Eyre* v. *Potter* (15 How. [U. S.], 56). Mr. Daniell sums up the cases in this proposition : "Where it is necessary to allege fraud or collusion, a general allegation of it in the bill will be sufficient to shut out a demurrer, although it is more correct to state the facts upon which the allegation is founded, as there is a great inconvenience in joining issue upon such a general charge without giving the defendant a hint of any fact from which it is to be inferred." (1 Daniell's Chancery Practice, 333 [3d Am ed.].) There could be no stronger evidence of the generality of the allegations which may be allowed than the criticisms there made upon the inconvenience of the rule.

There can be no reason why, under our Code, any more strict system of pleading should be adopted than that which prevails in an English court of equity. In each it is equally necessary to state the *facts* constituting the cause of action. It would seem that in the case at bar the complaint would

have been sufficient if it had alleged that the defendants Kohn and Minster had combined with Sherlock to cheat and defraud the plaintiff, by inducing him to part with goods, with a preconceived intent not to pay for them, and that in carrying out this conspiracy, false and fraudulent representations had been made to him by Sherlock, on which he (plaintiff) had relied, and had accordingly parted with specified goods to his damage, etc. This general allegation might be proved by any circumstances going to establish it. Any more specific allegations, if unproved, would present simply a case of variance, and not one of a departure from the entire scope and meaning of the complaint.

The cases where such a departure has been held to exist in common-law actions may be ranged under two principal divisions : 1. Where the action was framed in tort, and the proof disclosed a contract, or *vice versa*. (*Ransom* v. *Wetmore*, 39 Barb., 104 ; *Whitcomb* v. *Hungerford*, 42 id., 177 ; *Saltus* v. *Genin*, 3 Bosw., 250.) 2. Where the case was framed either on contract or tort, and the proof was of a different contract or tort. Illustrations are found in the following cases : If a complaint charges defendants as carriers, and the proof shows that they are forwarders, the case must fail. (*Hempstead* v. *N. Y. C. R. R. Co.*, 28 Barb., 485.) So of an allegation that the defendant guaranteed a note, and proof that he indorsed a note. (*Colvil* v. *Conklin*, 4 Duer, 45.) So of a charge of negligence in not constructing a cattle-guard, and proof of a neglect to fence. (*Parker* v. *Rens. and Sar. R. R. Co.*, 16 Barb., 315.) So of an allegation of an agreement between the defendant and a third person, and an assignment of it to the plaintiff, and proof of a contract between the plaintiff and the defendants. (*Curtiss* v. *Marshall*, 8 Bosw., 22.) These authorities do not touch the present case, where the allegations concern a conspiracy between specified persons to effectuate a purpose in a particular way, and the proof tends to show the conspiracy between the very parties to obtain the goods from the same vendor in a different way. The bargain is the same ; the parties are the same ; the instru-

ment is the same. The motive operating on the mind of the seller is, in substance, the same. The special manner of accomplishing the result is not wholly that which the complaint described. That seems to me to be a variance in some particulars only, and not in the entire scope and meaning of the complaint. This view is sustained by *Pixley* v. *Clark* (32 Barb., 268; S. C., 35 N. Y., 520). In that case, there was a claim for damages caused by turning water upon land. The proof was interference with the drainage of the land, which prevented the water naturally there from flowing off. This deviation was held to be a failure of proof in the lower court, but its decision was reversed on appeal. In this case, the substance of the charge was, that, through the act of the defendant, water was doing injury to the defendant's lawn. The variation in the proof was as to the mode of accomplishing the result, and that was immaterial, unless shown by statute to be material.

Accordingly, the complaint should not have been dismissed in the present case, provided that there was evidence on which the jury could find the charged version of facts.

In regard to this point, it must be conceded that the testimony is vacillating and contradictory. Sherlock gave different versions of the transactions between him and the defendants. Which of these was correct it is unnecessary to inquire. The whole matter was for the consideration of the jury. We have no power in this court to reject the testimony because it is contradictory The credibility of the witness Sherlock, and of Minster and Kohn, was for the jury to determine ; and as the testimony was conflicting, their decision is final

The cases which go to show that the testimony of a witness who contradicts himself, or who is impeached by the testimony of others, must be rejected by the judge, cannot be regarded as law in this State. (*Dunn* v. *The People*, 29 N. Y., 523 ; *White* v. *McLean*, 57 id., 670 ; *Wilkins* v. *Earle*, 44 id., 172 ; *Pease* v. *Smith*, 61 id., 677 ; *Warren* v. *Haight*, 62 Barb., 490.) It should be added, however, that the witness

Sherlock was corroborated by other witnesses on material points.

The defendants object to the mode of amendment adopted by the judge at the trial. If the propositions already discussed are sound, there was no error. If it has been shown that the judge acted correctly in not dismissing the case, then the case was a variance under sections 169 and 170. It was not a material variance, but an immaterial one. As has been shown, the only way to make a variance material is to make it appear, by affidavit or otherwise, that a party has been misled to his prejudice in maintaining the defence upon its merits. No such proof was offered. The variance being in this way immaterial, the court was not bound to order a written amendment to the pleadings, but might disregard the variance altogether or might, under section 170, direct the fact to be found according to the evidence. This subject is so fully and satisfactorily treated by JOHNSON, J., in *Catlin* v. *Gunter* (11 N. Y., 374, 375), that it is only necessary in this branch of the case to refer to his opinion. Variances are no longer to be determined upon the inconsistency between the pleadings and the evidence, but solely by proof that a party has been actually misled to his prejudice by the incorrect version of the facts given in the complaint.

It is true that the court below, in rendering its decision denying the motion for a nonsuit, stated that it allowed the complaint to be amended *so as to conform to the facts*. This was merely an incautious form of expression. The meaning is sufficiently obvious. What was meant was, that the facts should be found according to the evidence, and after the verdict an amendment might be made to conform to such facts as might be found by the jury. This is the regular practice. (4 Wait's Practice, 695.) It is there laid down as the rule that the trial may proceed without an amendment either before a judge or a referee, and if the plaintiff have a verdict he may move to have the pleading amended to correspond to the facts proved, provided the defendant has not been misled thereby, citing *Lettmann* v. *Ritz* (3 Sandf., 735); *Harmony* v.

*Bingham* (1 Duer, 210; S. C., 12 N. Y., 99); *Craig* v. *Ward*
(36 Barb., 377; S. C., 3 Keyes, 387). This practice may be
adopted in all cases, whether the variance would formerly
have been called material or not, unless the party has been
misled. 'In no point of view could the direction of the judge
have harmed the defendants, since the variance might have
been wholly disregarded and unnoticed.

The fallacy of the defendants' argument consists in the fact
that they assume that the present case is one in which the
introduction of new allegations is necessary to the plaintiff's
case. On the other hand, their complaint stated a complete
cause of action, and no new allegations are necessary. The
allegations as made being in some particulars incorrect, it is
only necessary to find the facts according to the evidence, and
the court may, subsequently, if it will, go through the formal
process of amending the record so as to cause a technical con-
formity to the facts. Such an amendment supplies nothing
new, but is simply in the interest of formality and regularity,
and may take place at any time after verdict, whether before
or after judgment (Code, § 173.) In the words of Lord
CRANWORTH, speaking of a similar case under the English
practice, "it is but a sort of pedantry to amend the bill by
adding further charges to introduce (as it were) evidence which
had already been furnished by both sides. Such an amend-
ment is utterly immaterial. The matter is now fully before
the court for decision, as regards the substance, and not the
·form." (7 H. L. Cases, 768.)

The defendants further insist that the court erred in admit-
ting the declarations of Sherlock, one of the alleged conspira-
tors, as against the other defendants. It is claimed that these
were given in at the trial before any conspiracy was estab-
lished, and that their admission at this stage of the proceed-
ings was erroneous.

This claim cannot be sustained. The time of admitting the
declarations is a mere question of order in proceedings, which
is a matter of discretion with the court. Nothing can be bet-
ter settled than the main proposition that the declarations of

one alleged conspirator cannot be admitted against his associates unless the conspiracy be established. There is, however, no rule that the conspiracy must be established first in the order of time. Convenience may require that the declaration be admitted provisionally, subject to subsequent proof of the conspiracy. If that is not offered, it should be stricken out. If this discretion is abused, there will be error. It seems that there is no abuse in the present case, as the declarations of Sherlock to the plaintiff were the natural and obvious mode of proving the contract. It could not well be established without them. Says Greenleaf (vol. 1, § 111), in treating of this subject : " Sometimes, for the sake of convenience, the acts or declarations of one alleged conspirator are admitted in evidence before sufficient proof is given of the conspiracy, the prosecutor undertaking to furnish such proof in a subsequent stage of the cause. But this rests in the discretion of the judge." He then adds, very properly, that this is not permitted, except under particular and urgent circumstances, lest the jury should be misled to infer the fact itself of the conspiracy from the declarations of strangers. In the case at bar, the declarations were the introduction to the contract — the vestibule to the structure, which otherwise could not be entered. If there is any case in which " convenience " requires the relaxation of the ordinary practice, it is the present. At the same time it is proper to reiterate, with Greenleaf, that the ordinary practice should not be departed from, except under particular and urgent circumstances.

The court, after the other testimony was in, was not bound to strike out the evidence of Sherlock's declarations, since the testimony tended to show a conspiracy, and this made them legitimate evidence. As soon as the conspiracy was established the declarations became part of the *res gestæ* under well-settled rules applicable to that branch of the case. (1 Greenleaf on Ev., §§ 108, 111 and 112 ; *Apthorp* v. *Comstock*, 2 Paige, 482.)

The final objection of the defendants is that it was error to admit testimony, on the part of the plaintiff, that he charged the goods in question to L. Minster.

This testimony seems to be admissible for the purpose of showing that the plaintiff relied on the statements of the parties to the assumed conspiracy. It was not offered for the purpose of showing that the contract was made with the Minsters, and thus to hold them liable upon it. It was but an item in the testimony to show the confidence of the plaintiff in Sherlock's representations. If those are properly considered as accompanying the acts of conspiracy, as has been already shown, the defendants are bound by them, and it was proper to prove that they influenced the plaintiff's action. In *Fellowes* v. *Williamson* (Moo. &. M., 306), being an action for a false representation as to the solvency of a third person, Lord TENTERDEN admitted the declarations of the plaintiffs at the time they trusted him as evidence for themselves. The plaintiff's entry in the case at bar is in the nature of such a declaration.

On the whole, no error was committed at the trial, and the judgment of the court below should be affirmed.

All concur, except REYNOLDS, C., dissenting.

Judgment affirmed.