WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—June, 1884.

### BEEKMAN V. BEEKMAN.

*In the matter of the probate of the will of* STEPHEN F. BEEKMAN, *deceased.*

The evidence in favor of and against allegations of undue influence, in proceedings for probate of a will, weighed, and the exercise of such influence negatived.

As to the admissibility and effect of a memorandum made by a decedent on the day whereon a paper propounded as his will was executed, to the effect that he had " made a will in favor of " the beneficiary designated in the alleged will, and adding the names of the subscribing witnesses—*quaere.*

A declaration of a daughter of the proponent of, and beneficiary under an alleged will,—to the effect that the latter had procured the making of the will, is not admissible in favor of contestants unless a conspiracy or combination is shown.

Kind treatment of a testator by one for whom he makes a testamentary provision may be viewed, according to the standpoint, as a valid reason for the bestowment, or as evidence of a subtle design improperly to procure it.

The doctrine of *falsus in uno, falsus in omnibus*—applied.

The restriction, contained in Code Civ. Pro., § 2557, of costs in proceedings relating to small estates, to actual expenses—observed.

APPLICATION for the probate of decedent's will, made by Gertrude Beekman, one of his next of kin ; opposed by Georgiana, his widow.   The facts appear sufficiently in the opinion.

WM. F. PURDY and L. T. YALE, for proponent.

J. T. STEARNS and F. LARKIN, for contestant.

THE SURROGATE.—The career of the testator sufficiently illustrates the gradual decay and disappearance of what were once known as our most distinguished families.   He was a grandson of Governor George Clinton through his mother, and his father was of that Beekman family after whom towns and villages were named.   His parents being possessed of considerable wealth, and living in modes of indulgence now condemned, this son was reared to no business, as I gather, but led an idle life, and fell into those irregular and reprehensible habits usually consequent thereon.   He was a man of considerable culture of mind and refinement of manners, but easy in his nature, with little disposition to self assertion.   Reared in a home and among a class where the wine cellar was a feature, he naturally and early in life acquired a habit of drinking, which adhered to him to the last, and was sometimes indulged to excess.

In 1848, he was married to a Miss Georgiana———. In 1865, a separation occurred between them, in consequence of his having formed a meretricious relation with Miss Maria Emily Lee.   He secured an annuity to his wife of $800 a year during her life, and he and Miss Lee went from Beekmantown, their former residence, to New York, where they resided and cohabitated

together until May, 1881, when, in consequence of dis-
agreements and difficulties between them, the testator
returned to Beekmantown, where he boarded with his
cousin Mrs. Gertrude Beekman, the proponent, until
his death, which occurred in February, 1882.   While
so living with Miss Lee, he made a will in her favor.
After the troubles between them had continued so long
and with so much violence, as to have at length de-
stroyed the last vestige of affection of each for the other,
he made a new will by which he gave his estate to his
wife.   Prior to that, he had had some litigation about the
estate of his deceased brother, in this court, with his
cousin Gertrude, in which he was unsuccessful.   This
had embittered him toward her at the time, and the
feeling would seem not to have wholly subsided when
he made the second will in March, 1881.   At length, in
May following, when he had become a rather prema-
turely old man, of about sixty, yielding to the advice
of those whom he regarded as his friends, he gathered
resolution sufficient to determine to leave Miss Lee and
seek a less harassing and more quiet mode of life; and
having ascertained that his cousin Gertrude would re-
ceive him as a boarder, he went there to reside, and to
spend the remainder of his days amid the scenes of his
childhood.   On August 4th, 1881, while so residing he
made a third will, by which he gave his estate to his
cousin.   These are the brief outlines of the history of
the man and his testamentary acts.

I have carefully read over the large mass of testimony
in the case, a very considerable proportion of which,
bearing upon the testamentary capacity of the deceased,
is of no value, in view of the final frank admission of

the contestant's counsel that he had such capacity, except as it might bear upon the question of undue influence. This is really the only question in the case.

Counsel for contestants have furnished me in their able and exhaustive briefs, a multitude of cases bearing upon this subject and determining what is undue influence. Of course, no two cases will present the same state of facts. The same may be said as to the cases to which I am referred by proponents' counsel, showing what will not be regarded as such influence. Clearly, an allegation or suspicion of such fraud would not, of itself, suffice. There must be more. There must be evidence to satisfy the mind that it was employed. I can discover only two grounds on which the suspicion is really based. One is that Mrs. Gertrude Beekman's lawyer drew the will, and the other the kind treatment which he received at her hands. As to the first, it appears that the deceased regarded Mr. Purdy, the lawyer in question, as the family lawyer. He seems to have acted as such for many years; sometimes for one and again for another, and occasionally for one in hostility to another. He was the counsel who advised in regard to the separation between the testator and his wife, and prepared the papers by which it was consummated. He acted on his behalf in relation to the pretended arrest and the placing of him upon the jail limits, with a view to the sundering of the tie which bound him to Miss Lee; and at the very time when this will was drawn he was the attorney for him in the defence of an action brought against him by Miss Lee, and which was undetermined at his death. There is not the slightest evidence tending to show that Mrs.

Gertrude Beekman ever made a suggestion to Mr. Purdy in regard to the will; but, aside from the usual presumption that it was prompted by his own volition, we have the fact that he contemplated some further testamentary act, as disclosed in a letter written by him to Mr. Mercer on the first day of June, 1881, in which he speaks of adding a codicil to his will. We also find a memorandum made by him on the day the will was executed, to the effect that he had "made a will in favor of G.," and adding the names of the subscribing witnesses thereto. That the "G." meant Gertrude, admits of no doubt. It could not have meant Georgiana, his wife, as she was his legatee and devisee in the will he had last previously executed. In this connection, I am not unmindful of the alleged declaration of Mrs. Varick a daughter of the proponent, to the effect that her mother had procured the making of the will, and which she denied having made. Mrs. Varick is not a party to the record, nor in interest. Hence her declaration, if made, is not evidence, unless it were shown, at some stage of the case, that she acted as a conspirator, or combined with her mother to procure the making of the will (Place v. Minster, *65 N. Y.,* *89–105*). I can find no evidence tending to show such conspiracy or combination. Indeed, there is no fact proven indicating that Mrs. Gertrude Beekman, the proponent, had the least agency in procuring the will to be made, or that she had any knowledge whatever relating to it, either before or at the time of its execution. This being so, there was no one with whom Mrs. Varick could conspire or combine, and, therefore, the alleged declaration of hers, if made, would have to be disregarded.

Another reason why such a declaration would be entitled to no consideration is that, having been made after the death of the decedent, it related to a past transaction. Of course, if it were inadmissible as being immaterial, then, her denial of it would furnish no ground for impeachment. But, after all, I am inclined to the belief that she made no such declaration.

Kind treatment of a testator by a person for whom he makes a testamentary provision, furnishes a different appearance, as it is viewed from different standpoints. While one may see in it a subtle design to improperly bias the affections and the will, another will discover only a valid reason for the act. The deceased was not, at any time, confined to the proponent's house by any sickness. She did not play the part of sick nurse to him at all. He was found dead in his room, apparently from a sudden hemorrhage. Prior to that, he had been in the habit of going about the village and chatting with the neighbors. She and he were cousins, and yet there is no evidence that she showed more kindness or attention to him than any kind hearted landlady would show to a boarder. He paid for his board, and was treated with no extraordinary attention by her at her house, he led a quiet and happy life compared to the one he had left, and it would have been remarkable had he not felt grateful for the home she furnished him. His wife, from whom he had long been estranged, had been provided for in the deed of separation; his mistress had been cast off, and it was not at all unnatural or unreasonable that he, being childless, should give what little remained to him of his estate to a member, by blood, of his own family.

In considering this case, I have entirely disregarded the testimony of Miss Lee, as unworthy of credit. It abundantly appeared from the evidence on both sides that she and the deceased cohabited for many years. Yet she, not choosing to decline answering, boldly testifies to the contrary. Her denial is clearly untrue. That portion of the history of the life of the decedent is regarded as material, and therefore the rule *falsus in uno, falsus in omnibus*, is applicable. I cannot agree with those who justify swearing to a falsehood in such cases. It is simply adding perjury to vice. But there are other reasons why she is considered unworthy of credit. It is unnecessary to enumerate them here.

On the whole, I think the will of August, 1881 should be admitted to probate.

On looking into the petition for the probate of the will of March, 1881, I find that the personal estate of the decedent was represented as not exceeding in value five hundred dollars, while, in that for the probate of the will admitted to probate, the real and personal estate is stated as not exceeding in value two hundred and fifty dollars. Hence, there being no other evidence of value, no costs, under § 2557 of the Code, can be allowed, other than the actual expenses of proponent.

Decreed accordingly.