### PUTNAM *v.* MATHEWSON *et al.*

(*Supreme Court, General Term, Fifth Department.* October 19, 1888.)

1. CHATTEL MORTGAGES—RELEASE—TROVER AND CONVERSION.
   Plaintiff purchased mortgaged property, the seller agreeing to procure the discharge of the mortgage, which secured a note on which one of the defendants was surety. The seller then sold property received from plaintiff to this defendant, who agreed to secure the discharge of the mortgage. This defendant called on the mortgagee to arrange the substitution of other security for the mortgage, and left with

him the note of a third person, and afterwards told plaintiff that the mortgage was released. The mortgagee stated that he had agreed to discharge the mortgage, and would have done so at the time of the interview if it had not been Sunday. Afterwards, defendant having transferred his property to a third person, without consideration, the mortgage was assigned to his son, the other defendant, who knew all the facts, and the property was sold thereunder. *Held,* that defendants were liable for conversion.

2. SAME—EVIDENCE—CONVERSATIONS.
Plaintiff having introduced evidence that defendant had said to him that he had agreed to pay the note and take up the mortgage, and had also said that the mortgagee had agreed to discharge the mortgage to plaintiff, and that plaintiff had told defendant that the mortgagee had stated to him the same things, defendant had a right to show the conversation between himself and the mortgagee relative to the note and mortgage.

3. SAME—EVIDENCE—SUFFICIENCY.
Though some of the allegations of the complaint were unproved, there was not a failure of proof under Code Civil Proc. N. Y. § 541, providing that where the allegation is unproved, not in some particulars only, but in its entire scope and meaning, there is a failure of proof.

Appeal from judgment on report of referee.

The action was brought by Richard Putnam for damages alleged to have been sustained by reason of the wrongful seizure, sale, and conversion by the defendants to their own use of certain personal property belonging to him. And it appears that on October 16, 1878, Corydon Putnam conveyed to the plaintiff a farm, and sold and delivered to him the property in question, for the purchase price of $6,355, of which the plaintiff then paid him $2,250, by conveyance to Corydon of a farm; assumed the payment of a $2,600 mortgage on the first-mentioned farm, and agreed to pay the balance by paying certain debts of Corydon to that amount; that there then was a chattel mortgage held by George Rood upon the property in question, to secure the payment of a promissory note of $500 which had been made in September previous by Corydon, and signed by the defendant Daniel Mathewson as his surety, due one year from its date; that Corydon agreed to have the personal property released from the mortgage; that on October 17, 1878, he conveyed to Daniel Mathewson the farm which had been conveyed to him by the plaintiff; and that at that time he was owing debts other than those provided for on the sale to the plaintiff, amounting to upwards of $2,000, on which the defendant Daniel Mathewson was his surety. And the referee found that in consideration of such conveyance to him the latter undertook to pay such outstanding indebtedness, which included the Rood note, and to immediately procure the release of the property in question from such chattel mortgage; that Daniel Mathewson did furnish to Rood additional security for the payment of a portion of the amount of the note, and promised to give him further satisfactory security for the payment, or pay it, and in consideration thereof Rood agreed that he would at once release the property from the mortgage; that for the purpose of defeating the consummation of such agreement, and to injure the plaintiff, the defendants and one Elijah Mathewson conspired together to make use of the chattel mortgage to take and sell the property in question; that in aid of such purpose Daniel Mathewson conveyed and transferred his property, including the farm so conveyed to him, to Elijah Mathewson, and an assignment of the chattel mortgage was obtained from Rood to the defendant Alphonso Mathewson; and that afterwards, and before its maturity, the property was taken and sold pursuant to the mortgage. As conclusions of law, the referee determined that the lien of the chattel mortgage was terminated by force of the agreement between Rood and Daniel Mathewson to release it, or became ineffectual when the assignment of it was taken by the defendant from Rood; that the mortgage was not effectual in the hands of Alphonso Mathewson, as assignee, to afford any right to take and sell the property; and that the defendants were chargeable for conversion of the property in so taking and selling it, and directed judgment for the plaintiff for the value of the property.

Argued before BARKER, P. J., and HAIGHT, BRADLEY, and DWIGHT, JJ.

*John G. Record,* for appellant Alphonso Mathewson.　*O. Edson,* for appellant Daniel Mathewson.　*Morris & Lambert,* for respondent.

BRADLEY, J., (*after stating the facts as above.*)　The cause of the plaintiff's complaint was the taking and selling the property.　This the defendant Alphonso Mathewson assumed to do by virtue of the chattel mortgage made by Corydon Putnam to George Rood, of which such defendant was assignee.　The mortgage, when made, was valid security for the payment of the note of the mortgagor, and it remained so at the time of the purchase of the property by the plaintiff of Corydon, who undertook to perfect the plaintiff's title by procuring the release of the property from the mortgage.　The burden of proof was upon the plaintiff to show that the mortgage, at the time Alphonso took the assignment of it, had ceased to be effectual, or then, or thereafter, became ineffectual as a charge upon the property.　There was a conflict of evidence in respect to some of the material facts involved in the issues, and the referee adopted as true that on the part of the plaintiff, and the most favorable to him.　The measure of credibility of the witnesses, whose evidence is in conflict, will, for the purposes of this review, be deemed disposed of by the referee.　The note secured by the mortgage was signed by defendant Daniel Mathewson as surety for Corydon, the other maker and mortgagor, and the evidence supports the finding of the referee that, shortly after the purchase of the property by the plaintiff, the defendant Daniel Mathewson took conveyance of a farm from Corydon Putnam, and, as the consideration for it, undertook to pay certain debts of his grantor, including that secured by the mortgage upon the property in question, and to procure the release of that property from the mortgage.　By this arrangement, that defendant, as between him and his grantor, assumed the relation of principal debtor in respect to the note secured by the mortgage.　He thereupon called upon Rood, the holder of the mortgage, and endeavored to make arrangement for the substitution of other security for the payment of the debt, and thus cause the release of the property from the mortgage.　He then left with Rood the promissory note of a third party for $150.　The referee found that such note was delivered to him as further security for the payment of the mortgage debt, and that in consideration of that, and the promise made by Daniel Mathewson of further security to be furnished, or of payment in cash to him, Rood then agreed with that defendant to at once release the property from the mortgage.　This finding of the referee is challenged by the defendants' counsel.　The plaintiff says that the defendant Daniel Mathewson told him that he had made arrangement with Rood, and that the latter had agreed to discharge the mortgage; that the plaintiff, having seen Rood, shortly after met that defendant, and related to him the conversation had with Rood on the subject, in which the latter said he had agreed with defendant Daniel Mathewson to discharge the mortgage, and would have done so at the time of the interview if it had not been Sunday.　The evidence of these conversations with Daniel Mathewson was then competent as against him only, and did not affect the other defendant.　And as to him there was no direct evidence of an agreement of Rood to discharge the mortgage.　There are, however, circumstances appearing in the evidence, and inferences derivable from it, tending somewhat in that direction, and to warrant the conclusion of the referee that the defendants confederated together to make the mortgage effectual as a means of taking and selling the property covered by it.　While Rood, by his testimony, denied that he took the note of the third person as security for the mortgage debt, said he received it for collection, and denied making any agreement to discharge the mortgage, he admitted that, before making the assignment of it to the defendant Alphonso Mathewson, he said in the presence of the latter that he saw the plaintiff the previous Sunday, and

would have then discharged the mortgage if it had not been Sunday. The evidence also tends to prove that Rood treated the mortgage, or his action in reference to it, so much subject to the control or direction of Daniel Mathewson, that he declined without his consent to make assignment of it to Alphonso; and he saw the defendants together and such consent was given before it was made. Before this was done, Daniel Mathewson had conveyed and transferred substantially all his property to his son Elijah, who participated with Alphonso, who was also a son of Daniel, in obtaining the assignment of the mortgage, and joined with him in a note to Rood in payment for it and the mortgage debt. The finding of the referee was warranted that Alphonso was advised, at the time he took the assignment, of the circumstances relating to the transaction between Corydon and the father, (Daniel,) by which the latter had undertaken to discharge the mortgage; and in his presence, before the assignment was made, Elijah stated to Rood that his father had directed him to obtain the note before mentioned, which had been delivered by him to Rood, and to forbid the discharge by the latter of the mortgage. Although the question whether the finding before referred to of an effectual agreement on the part of Rood to discharge the mortgage is a close one, we are inclined to think that the evidence, in view of all the circumstances, permitted the inference that such an agreement was in fact made by Daniel Mathewson with Rood, which inured to the benefit of the plaintiff. When he took the assignment of the mortgage, Alphonso, for some reason, apprehended difficulty with the plaintiff if he undertook to enforce it against the property. It is sometimes difficult to represent directly by evidence the purposes of persons who may have united to accomplish an object prejudicial to another. The motives by which they are actuated must usually be derived from the circumstances leading to and attending the transaction, and be considered in view of the consequences sought to be produced by it; and necessarily rest much in inferences derivable from the evidence. When Daniel Mathewson took from Corydon Putnam the conveyance of his property, and, as consideration for it, assumed the payment of certain debts of his grantor, including that secured by the mortgage, and undertook to procure a release of the property covered by it from its lien, his relation to the debt became such that he could not make the mortgage available for his benefit; but his duty to all concerned was to defeat its operation as a lien upon or transfer of the property covered by it. Assuming that there was no agreement which afforded to the plaintiff the right to a discharge of the mortgage, the right of Alphonso to take in his own right an assignment of the mortgage, and enforce it against the property, could not be questioned; and having done so, his motive would not legitimately be the subject of inquiry, because it would be the exercise of his legal right. *Morris* v. *Tuthill*, 72 N. Y. 575. But the referee has found that the defendants and Elijah Mathewson conspired together to injure the plaintiff by causing the violation of such undertaking and duty assumed by the defendant Daniel, and by causing the property to be sold upon the mortgage; and that in furtherance of such joint purpose the latter conveyed and transferred his property to Elijah, without consideration, thus placing himself apparently in the condition of insolvency; and the assignment of the mortgage was, by his consent and advice, made to the other defendant. The evidence tends to support these findings. While the assignment was taken by Alphonso, there was no apparent beneficial purpose of his paying the full amount of the claim for it, other than to make the mortgage available for the benefit of his father, who was primarily liable to pay it. The conveyance made by the latter to Elijah embraced the land conveyed to him by Corydon Putnam. Both were apparently insolvent after those conveyances were made; and no reason appears for the disposition by the father of his property other than the fact of his liability upon the debts of Corydon, who was his son-in-law. The enforcement of the mortgage against

the property would therefore apparently leave the plaintiff without any effectual remedy for reimbursement against either of them. Having placed the father in this situation, the defendants and Elijah unite in procuring the assignment of the mortgage to Alphonso, who was then advised of the circumstances which imposed upon the father the duty to discharge the mortgage, and forbid him doing anything to give effect to it as against the plaintiff. The inference was permitted by the evidence that the transaction was the result of their concerted action, having somewhat the nature of a conspiracy, and in it the purpose of denying to the plaintiff the benefit of the agreement which Daniel Mathewson had made with Corydon and the plaintiff to procure the release of the property from the mortgage. In that view, Alphonso might be treated as the depositary of the assignment so produced, and charged with the consequences of the relation which his father had assumed to the mortgage debt, and by his agreement to protect the property against the operation of the mortgage; and therefore the assignment be rendered ineffectual to support any proceeding by him to enforce it against the property in question. *Moore* v. *Tracy*, 7 Wend 229; *Place* v. *Minster*, 65 N. Y. 89. It is deemed unnecessary here to refer specifically to the additional circumstances furnished by the evidence in support of this conclusion. This case is not free from the difficulty, not uncommon in cases involving considerations similar to those presented in this one, of developing by evidence the facts in its support; and while the evidence is by no means conclusive in that direction, our view, after a careful examination of it, is, that it, and the deductions legitimately derivable from it, presented for the referee questions of fact upon the issues, and that his determination of them may properly be sustained.

There was no error in the direction of judgment against both defendants, or in the measure of damages adopted by the referee. The statement of the defendant Daniel Mathewson, made shortly before the sale of the property, that he should have it sold "if matters remained as they were," was consistent with his participation in procuring the assignment of the mortgage to Alphonso, and with the purpose for which it was made to him, of which the sale might be treated as the consummation; and the contention that the allegations of the complaint, in their entire scope and meaning, were unproved, and that, as a consequence, there was a failure of proof within the meaning of the statute, is not supported. The evidence upon which the recovery was directed was within the cause and purpose of the action, although in some particulars the allegations of the complaint were unproved. Code Civil Proc. § 541.

An exception to the exclusion of evidence offered by the defendants requires consideration. After the plaintiff rested, the defendant Daniel Mathewson was examined as a witness on the defense, and testified that he had a talk with Rood, at Cherry Creek, after a time referred to, about the note held by the latter. He was then asked what occurred between him and Rood at that time, at Cherry Creek, in regard to the Rood note or mortgage. The evidence was excluded upon the objection of the plaintiff, and the defendants severally excepted; and then the defendant offered to prove by the witness that he did not pay the Rood note, which was excluded, and exception taken.

The evidence offered by the first above question was not admissible, unless rendered competent by some evidence previously introduced. The plaintiff had given evidence of a conversation had between himself and Daniel Mathewson, October 18, 1878, to the effect that the latter had said to him that he had bought the farm of Corydon, and had agreed to pay the Rood note and take up the chattel mortgage; and of another later conversation in which Mathewson said he had done as he agreed; that he had been down to Cherry Creek, seen Rood, and had paid him the note; had let him have the $150 note (before referred to) in payment upon it; that he had not taken a discharge of the chat-

tel mortgage, but had agreed with Rood to discharge it to the plaintiff. And the latter gave evidence of another conversation with him, in which he related to Mathewson an interview he had recently had with Rood, to the effect that the latter said that Mathewson had paid him, and he had agreed to release the chattel mortgage, and would have done so at the time if it had not been Sunday.

One question on the trial was whether Rood had agreed with Daniel Mathewson to discharge the chattel mortgage. The evidence of these conversations between the plaintiff and that defendant was evidence against the latter. He had denied making any agreement with Corydon to pay the Rood note. This was the situation of the evidence upon the question whether or not Rood had agreed with Mathewson to discharge the mortgage when this exception was taken. The evidence of the conversations pointed to the interview between him and Rood at Cherry Creek, apparently at the time referred to in the question calling for the excluded evidence. That was the time when, on the part of the plaintiff, it was claimed the declarations of Mathewson tended to prove an agreement was made by Rood to discharge the mortgage. Why, then, was not what occurred between Mathewson and Rood at that time and place, in regard to the note or the mortgage, competent and material evidence? The only time pointed to by the evidence when an agreement was made by Rood to discharge the mortgage was that referred to by this question, put to the witness; and whatever was accomplished in that respect was dependent upon what occurred between those persons in regard to the Rood note and mortgage. There was no principle of estoppel necessarily applicable to exclude the evidence of the witness on that subject. So far as related to the question whether such an agreement had been made, the evidence seems to have been erroneously excluded. It may, however, be said that, while the referee found that such an agreement had been made, he also determined that, independently of that fact, the plaintiff was entitled to recover upon the facts found by him. That proposition has been hereinbefore recognized in so far that the evidence warranted that conclusion. But it does not appear that the question of such agreement to discharge the mortgage, so considered and found in the affirmative by the referee, had no influence upon him in reaching the other conclusions of fact which he found, and arriving at the result which he did. It is possible, and may be, that the admission of this excluded evidence may have produced no other result than that reached by the referee; but, as the court cannot see that it necessarily would not, the error cannot, within well-settled rules applicable to the trial of actions at law, be disregarded. And for that reason, without considering the other exception referred to, the judgment must be reversed, and a new trial granted; costs to abide the event.

BARKER, P. J., and HAIGHT and DWIGHT, JJ., concur.