(47 App. Div. 302.)

### COLYER v. GUILFOYLE.

(Supreme Court, Appellate Division, Second Department.　January 9, 1900.)

1. SUFFICIENCY—SUBSTITUTION OF CONTRACTS—COMPLAINT.

A complaint charging that defendant, a builder, agreed with a contractor to do plastering for $15,000, and that plaintiff, relying thereon, sold the contractor materials on which there was due a certain sum; that thereafter defendant, with intent to defraud plaintiff, induced the contractor to cancel the contract, and to substitute a new contract therefor, between defendant and the contractor's son, for an amount less than the original contract; that the contractor was insolvent, and by such substitution plaintiff lost his debt,—states facts sufficient to constitute a cause of action for conspiracy.

2. SAME—FAILURE TO PROVE—NONSUIT.

Where plaintiff claimed that defendant conspired with a contractor to substitute for a previous contract for plastering an agreement with the contractor's son whereby plaintiff was prevented from recovering his claim for materials furnished the contractor, but failed to prove that the original contract was for a specific sum, or that the second contract was executed to defraud creditors, and it appeared that plaintiff had been paid a larger amount by the son than the value of materials furnished him to complete such contract, plaintiff showed no injury from the substitution of the contracts, and hence defendant was entitled to a nonsuit.

Appeal from trial term, Kings county.

Action by Joseph H. Colyer against John Guilfoyle for conspiracy. From a judgment in favor of defendant, plaintiff appeals. Modified.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

Hector M. Hitchings, for appellant.

Charles J. Patterson, for respondent.

PER CURIAM.[1]　The action is brought to recover damages for a conspiracy between the defendant and Henry White and Henry A. White to cheat and defraud the plaintiff out of certain material, and the value thereof, sold by the plaintiff to Henry A. White. The defendant is a builder, who at the time of the occurrence which is the subject of the action was engaged in the erection of an armory. The plaintiff alleges that Henry White made a contract with the defendant to do the plastering for the sum of $15,000, which the defendant agreed to pay; that on the faith and credit of this contract the plaintiff sold to said White a large quantity of material upon which there is still due the sum of $1,333.27; that afterwards the

---

[1] This opinion was written by Mr. Justice CULLEN before his designation as an associate judge of the court of appeals, and is adopted by this court.

defendant, with intent to cheat and defraud the plaintiff, induced said White to surrender and cancel said contract, and to have a new contract made between the defendant and Henry A. White, the son of Henry White, to be substituted in place thereof, by which the agreed price of the work should be only the sum of $9,000; that the elder White was totally insolvent, and without money other than what he could obtain on such contract; and that by reason thereof the plaintiff lost his debt. At the conclusion of the evidence the learned trial court dismissed the complaint on the merits.

We have no doubt that an action for a conspiracy as alleged in the complaint could be maintained. Moore v. Tracy, 7 Wend. 229; Place v. Minster, 65 N. Y. 89; Pilcher v. Levino, 80 Hun, 399, 30 N. Y. Supp. 314. The last case was decided by the late general term of this department. But we are of opinion, however, that the evidence was not sufficient to justify the submission of the case to the jury. The evidence of the conspiracy offered by the plaintiff consisted of the testimony of the two Whites, which is of the most unsatisfactory character, and it does not appear with great clearness what either of those witnesses meant to assert. For the purpose of this appeal, however, the evidence must be regarded in the most favorable view of it which the jury could have adopted. It clearly appears that the original written contract, signed by the elder White, was for $9,000 only. If we assume that the testimony was sufficient to submit to the jury the claim that this was not the real contract between the parties, but only a blind or cover, there is not the slightest evidence to the effect that there was ever an agreement to pay $15,000 or any other specific sum for the work. There was either a contract to do the work on a quantum meruit, for its fair and reasonable value, or the elder White was not a contractor at all, but merely the agent of the defendant, Guilfoyle. The learned counsel for the appellant states in his brief that White, Sr., testified "that he always supposed he was merely superintendent for the defendant on the job." We cannot find this exact testimony in the case, though it may be we have overlooked it. However, there is evidence on which such a claim possibly may be predicated, though as to its effect we express no opinion. If we assume that White, Sr., was merely the agent of the defendant, then plainly no conspiracy has affected the rights of the plaintiff. He may sue the defendant, as an undisclosed principal, for the value of the goods sold. This suit, however, cannot be turned into an action of that character; for here the action is in tort, and execution on a judgment issued against the defendant would run against the person. Nor will the result be changed if we assume that the work was done under an oral agreement for a quantum meruit. It is not pretended that the original written agreement for $9,000 was made with any intention of defrauding White's creditors. The sole object of its execution, as stated by White, was that it might be shown to other bidders on the work, and thus afford the defendant a justification for preferring White to others, though it must be confessed that in this respect, as in the rest of the witness' testimony, it is very difficult to ascertain what he really meant to assert. Assuming such to

have been its object, surely the agreement was a fraud on no one. Indeed, the plaintiff does not rest his charge of fraud or conspiracy on the execution of the original agreement, but on the surrender of the agreement by White, Sr., and the execution of a new agreement between the defendant and White, Jr., for doing the whole work. Both agreements bear date April 17, 1893, and the work was commenced shortly thereafter. The plaintiff contends that the agreement with White, Jr., and the surrender were made in November, 1893. The defendant testifies that the second agreement was made immediately after the first, and that the reason of the substitution of the younger White for the elder was that the latter was insolvent, and hence he asked that the contract be made in the name of his son. The defendant would seem to be confirmed in this statement by the fact that all the checks given in payment of the work—the first as early as May 27th, long before the alleged substitution testified to by the Whites—were made to White, Jr., and the money received by the plaintiff on account of the goods sold was in such checks to the order of White, Jr., indorsed over to the plaintiff by the father in the son's name. But assuming that, notwithstanding these facts, the question of the time when the contract with White, Jr., was made was for the jury, still we do not see how the making of a new contract affected the interests of the plaintiff. The elder White gave up nothing by the surrender of the $9,000 contract, because the very foundation of the plaintiff's case is that that instrument was not the real contract between the parties. White's claim for the work he had done under the oral contract to the time he ceased work still continued undischarged, except so far as it had been satisfied by payment. If this has not been assigned, the plaintiff, as a creditor of White, may reach this claim. Nor did the plaintiff lose anything by the delivery or sale of material after the alleged transfer in November. He furnished, subsequent to that time, White, Jr., with goods to the amount of $348, but during the same period he received from White, Jr., the sum of $500 on general account. There is not any evidence in the case tending to show that the defendant ever suggested the purchasing of the goods on credit or otherwise from the plaintiff or any other person. The sole claim is based on the alleged substitution of contracts in November, 1893. This, as we have suggested, seems disproved by the checks and conduct of the work. But, be that as it may, its effect is not shown in any manner to injure or defraud the plaintiff. The action was at law, and the defect in the plaintiff's case was a failure of proof. The dismissal on the merits was therefore erroneous. There should have been only the ordinary nonsuit.

The judgment appealed from should be modified by striking therefrom the words "on the merits," and as modified affirmed, without costs of this appeal to either party.